**OWENS vs. COLLINSON.—*December,* 1830.**

The securities on an administration bond, in a suit brought by a distributee against the administrator, are not competent witnesses to prove, that the assets of the deceased have been consumed in the payment of debts.

It is not true as a uniform rule, that a creditor is a competent witness for administrators. He is only so, where the assets are sufficient for the payment of debts. When they are not, whether the administrator be plaintiff or defendant, if the verdict swells the fund to which he must look for the payment of his debts, his incompetency is manifest ; he is only competent when the verdict cannot affect his interest.

The bail of the defendant is not a competent witness for him.

In an action upon an administration bond against a surety, the administrator is not a competent witness for the defendant. The witness is responsible for costs, in case of a recovery against the defendant.

An administrator, who, being called upon in Chancery to account, comes promptly into court, answers the bill, and submits all his accounts and vouchers, and furnishes the means of detecting the errors which are fairly attributable to him, is not to be presumed guilty of a fraudulent concealment of credits actually omitted.

Accounts settled in the Orphans Court, by executors, administrators and guardians, are *prima facie* evidence in all suits touching the matters therein contained, to which they are parties; and the *onus probandi* rests on him who seeks to impeach their correctness.

The Orphans Courts are the tribunals invested by law, with the power of passing claims against the estates of deceased persons.

If an executor or administrator, *bona fide,* without any knowledge of its injustice, pay a claim previously passed by the Orphans Court, though not proved in the manner prescribed by the testamentary system, such pay-

ment is not made at his risk.   To a credit therefor, he is not only *prima facie* entitled, but his right to it cannot be controverted.   So if he retain the amount of his own claim thus passed.

When the accounts of an executor are under an examination in Chancery, if it should appear on the face of vouchers passed by the Orphans Court, that a claim paid, was not a just one against the deceased, it is as much the duty of a Court of Equity to reject it, as if the illegality of its allow- ance were established by proof *dehors.*

I, as executor of E, claimed an allowance for the payment of a note signed I and E, which was admitted by the Orphans Court ; I passed his account accordingly, and was credited for the whole amount.   This account being under investigation in Chancery, and it being admitted that the signature I and E, was in E's hand writing, in the absence of proof of partnership be- tween them: HELD, that the *prima facie* character of the account was not impeached.

Where two are bound for the payment of a specific sum, and one pays the whole, he can either at law or equity, call upon the other to contribute, and thus recover a moiety of what he has paid.

APPEAL from the Court of Chancery.

The appellant, *Thomas Owens,* a minor, by his *prochein ami,* filed his bill of complaint against the appellee, *John Collinson,* on the 9th of May, 1826.   The bill stated that one *Edward. Collinson,* of *Anne Arundel* county, died in- testate, and without issue, sometime in the year 1823, pos- sessed of a considerable personal estate, leaving the com- plainant, (a sister's son) and several brothers and sisters, his next of kin, and personal representatives.   That *John Collinson,* the appellee, took out letters of administration on his estate; possessed himself as such, of the assets of the deceased, and disposed of the same to an amount more than sufficient to discharge all claims against him.   That a large surplus remains in the hands of the administra- tor, subject to distribution among the representatives of the intestate.   That instead of distributing the sur- plus, as bound by law to do, the administrator has convert- ed the same to his own use, and refuses to pay complainant the share to which he is entitled; alleging that the assets of the intestate have all been paid away, or retained by the administrator for debts due him from the deceased; which debts so retained for, the complainant charges to

be false, and fraudulent; and he further charges that the intestate died indebted to a very inconsiderable amount, and that if pretended debts to a very large amount, have been paid by the administrator, it has been collusively done, and for the purpose, the more easily to convert the residue to his own use. *Prayer*, that said administrator may be compelled to account with complainant, and to pay him his distributive share, of whatever balance may be found to be due, and for general relief.

The *subpoena* which was issued on the above bill, was returnable to July term, 1826.

At that term the defendant filed his answer, admitting that *Edward Collinson* died intestate in the year 1823, leaving the complainant, the son of a sister, and several brothers and sisters, and the children of brothers and sisters, his personal representatives, as alleged in the bill. That said intestate died seized, and possessed of both real and personal estate, and that defendant became his administrator. That the intestate being largely indebted to the defendant, and various other persons, he applied to, and obtained an order from the Orphans Court, for the sale of his personal estate, which was accordingly disposed of, and the proceeds applied, by the defendant, to the payment of the debts of his intestate, as will appear by copies of his accounts settled with the said court, marked exhibit (A) and the vouchers accompanying the same, numbered from 1 to 23, inclusive. That by said accounts it will appear, that the personal estate of the intestate was inadequate to the payment of his debts, and being so, the defendant alleges that application was made to the Court of Chancery for a sale of the real estate, to make up the deficiency; that a sale was accordingly decreed, and the proceeds thereof, after supplying the deficiency of the personal estate, were divided among the legal representatives of the intestate, all of whom, except the guardian of complainant, are perfectly satisfied, with the manner in which the defendant has conducted his administration.

The answer further states, that the intestate and defendant, for many years, were co-partners in all their various dealings and business, and that they continued so to be until a short time previous to the death of the intestate, when a dissolution, by mutual consent, took place, and an adjustment and settlement of their transactions and accounts was made in the presence of *William Collinson* and *Edward Harper*, two of the representatives of said intestate, upon which settlement, said intestate became indebted to the defendant in the amount, for which he has been allowed in his settlements with the Orphans Court. The answer denied all fraud, &c.

*Exhibit* (A) contains the accounts settled by the defendant, as administrator of *John Collinson*, with the Orphans Court; the first proved and passed on the 8th February, 1825, the latter being the final account, on the 24th of June of the same year, by which the estate appears to be overpaid the sum of $3,958 91½ cents.

*Voucher* No. 13, is a note signed by *John* and *Edward Collinson*, payable to *Nathaniel Chew*, on demand, for $228 50, dated May 22, 1812, which with interest to the date of its payment, by the administrator, on the 28th January, 1825, amounted to $347 54. For the whole of this sum the administrator obtained a credit.

*No.* 16, is a note similarly signed, in favor of *William Collinson*, for $550, dated July 14, 1814, and amounting the 7th January, 1825, when paid by the administrator, to $896 77, for the whole of which a credit was likewise obtained.

*No.* 18, is an open account against *John* and *Edward Collinson*, due *Nathaniel Chew*, amounting when paid by the administrator, to $470 38, for which also a credit was obtained.

*No.* 19, is an account against the deceased, due *John Collinson* the administrator, shewing a balance due the latter on the 25th March, 1823, of $3,909 51, a credit for which was also obtained.

*No.* 21, is a similar account, exhibiting a balance due to the administrator of $580 35, for which likewise a credit was obtained.

The above claims were all proved, and passed by the Orphans Court, prior to the settlement of the accounts of the administrator.

Commissions issued by consent, to *Anne Arundel* and *Baltimore* counties.

With one of those commissions the complainant filed a copy of the administration bond of the defendant, by which it appeared that *Edward C. Harper* and *William Collinson*, were his securities for the faithful performance of his trust, and under the same commission, persons of the same name were examined as witnesses on the part of the defendant.

There was evidence that the administrator had received, after the death of the intestate, dividends on bank stock, standing in his name, to the amount of $355 50, with which he had not charged himself in his settlements with the Orphans Court; and it was further proved under the commissions, that the proceeds of a crop of tobacco sold by one *Norris*, on account of the intestate, were received by the administrator, with which in his said settlements, he had failed also to charge himself.

On the 8th of March, 1828, the auditor in obedience to the Chancellor's order for an account, stated an account between the defendant and complainant, by which, charging the defendant with the proceeds of the tobacco sold by *Norris*, the dividends on the bank stock, and the sums specified in the before mentioned vouchers, there appeared to be a considerable amount due the complainant, as his distributive share of the said intestate's estate.

Exceptions were filed by the defendant to this account, and the auditor in obedience to specific instructions given him by defendant, stated another account on the 31st May, 1828, according to which, crediting him with the disputed vouchers, and omitting to charge the proceeds of said to-

bacco and bank dividends, he is made to have overpaid the estate the sum of $4077 80 cents.

BLAND, Chancellor, on the 2d of June, 1828, rejected both of those accounts, and directed the auditor to state another, upon certain principles prescribed in the order.

On the 3d of June, 1828, the auditor, in conformity with this order, stated a third account, by which the estate appeared to be overpaid $3132 32. On the same day, BLAND, Chancellor, rejected this account, as not being in accordance with his order, passed the day before; but being of opinion that the defendant had distributed all the assets which came to his hands, he dismissed the bill with costs.

From this decree the complainant appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*Alexander*, for the appellant, contended,

1. That the appellant was entitled to a proportion of the dividends of the bank stock, and of the proceeds of the tobacco, which the appellee was proved to have received, and with which he is not charged. 2. That there is no evidence that appellee's vouchers, Nos. 13, 16 and 18, were legal and equitable claims against the intestate. 3. That the appellant is entitled to a proportion of the amount of vouchers, Nos. 19, 20 and 21, there being no evidence that said vouchers were just and equitable claims against the estate of the intestate; and because if said claims are proved once to have had existence, they furnish no evidence of the balance due by intestate to appellee on the settlement of all their accounts and dealings, which is charged in the answer, to have taken place between them. 4. The appellant relies on the pleadings and proofs, as evidence that the accounts passed with the Orphans Court, by the appellee as administrator, are not correct; and also to support the charge of fraud, as set forth in his bill. 5. The appel-

lant admits that he cannot recover beyond the amount of the personal assets, which came into the possession of the appellee, deducting the legal expenses of administration. He contended also that the securities in the administration bond were not competent witnesses for the appellee. On this point, he referred to *Ferguson vs. Cappeau*, 6 *Harr. and Johns.* 394. *Ib.* 402. 1 *Philips' Ev.* 52. *Craig vs. Cundell*, 1 *Campb.* 381. He referred also to *Ringgold vs. Ringgold*, 1 *Harr. and Gill*, 81. *Hart vs. Ten Eyck*, 2 *Johns. Ch. C.* 67. The act of 1798, *ch.* 101, *sub-ch.* 8 and 9. 1785, *ch.* 46. 1802, *ch.* 101, *sec.* 9. *Bean vs. Jenkins*, 1 *Harr. and Johns.* 135. *Morton vs. Beall*, 2 *Harr. and Gill*, 136. He further insisted, that the defendant's interrogatories were leading, and to show that answers to such interrogatories are not evidence, he referred to 2 *Madd. Ch. P.* 413, 442. *Morse vs. Royall*, 12 *Vesey, Jr.* 360. *Newland's Prac.* 297, 298. Objections of this description, may be made at the hearing. *Gilbert's Rep.* 150. 1 *Harr. Ch.* 455. 1 *Ambler*, 585. *Collins vs. Elliott*, 1 *Harr. and Johns.* 1. *Stevenson vs. Myers, Ib.* 102. 1 *Ball and Beatt.* 413.

*Brewer*, Jr., for the appellee.

The settlements in the Orphans Court, are at least *prima facie* evidence for the appellee. 1798, *ch.* 101, *sub-ch.* 9, *sec.* 13, 15. *Scott vs. Dorsey*, 1 *Harr. and Johns.* 231. *Spedden vs. The State*, 3 *Harr. and Johns.* 276. *Gist vs. Cockey and Fendall*, 7 *Harr. and Johns.* 134.

The competency of a witness should be objected to, at the examination; it is too late, after the return of the commission. A copy of the administration bond is not evidence to shew, that *Harper* and *Collinson* were sureties; that fact should have been proved by the subscribing witnesses. But if the fact of their being sureties was sufficiently proved, still as there is no direct interest in the result of the suit, the objection to their competency cannot be sustained. *King vs. Prosser*, 4 *Term Rep.* 17. *Scott vs. Dorsey*, 1 *Harr. and Johns.* 232. If the interrogatories

are supposed to be leading, the objection should be made at the examination, as both parties are present, or notified to be present.   On the subject of leading interrogatories, he referred to 1 *Ambler*, 585.   *Morse vs. Royall*, 12 *Vesey, Jr.* 360.   *Gilb. Rep.* 150.

DORSEY, J., delivered the opinion of the court.

The first question to which our attention is called in the consideration of this case is,  are the securities in an administration bond, in a suit brought by a distributee against the administrator, competent witnesses to prove that the assets of the deceased have been consumed in the payment of his debts?  Upon principle and analogy, this question is simple and easy; but when viewed in reference to decisions on the subject, it cannot be regarded as free from difficulty. In *Carter vs. Peace*, 1 *T. R.* 163, it was decided, that in an action against an administrator, one of his securities, for the due administration of the effects, is a competent witness to defeat the action.   And this case is cited as establishing that principle in 2 *Stark. Ev.* 775.    The grounds assigned by the court in support of their opinion, were, that " the bare possibility of an action being brought, is no objection to competency ;"—" that in order to disqualify a witness, it is necessary to show that he will derive a certain benefit from the result, one way or other ;"—" that even the creditor of the administrators, which is a stronger case, would be a competent witness."   With great deference to authority so imposing, it does appear, that the grounds upon which the decision of the court is placed, are not sufficient to sustain it.   In the first place, it is not true as an uniform rule, or principle of law, that a creditor is a competent witness for administrators.   He is only so where the assets are sufficient for the payment of debts.   Where they are not, whether the administrators be plaintiffs or defendants, if the verdict swells the fund to which he must look for the payment of his debt, his incompetency is manifest.   He is

only competent, therefore, where the verdict cannot affect his interest. Can it be said then, that the admission of a creditor to testify for the administrator, (under the circumstances in which only his testimony is admissible,) is a stronger case, than that of a surety in the administration bond testifying for the administrators, defendants; when it is considered that a verdict for the defendants is a discharge *pro tanto*, of his liability on his bond; and that a verdict for the plaintiff is evidence against him the witness, in a suit on his administration bond. Can it be a bare possibility that an action will be brought, that the interest is too remote, when the liability is so immediate, the interest so obvious, the benefit so certain?

The case at bar, is not one, where the recovery against the administrator, is an indispensable preliminary to the institution of a suit against the securities; but one in which their responsibility, (except in amount) is already fixed. Where they might have been sued before, or may be sued after the decree of the Chancellor, where the amount which ought to be recovered against the defendant, is identical, with that which should be recovered against them; where the decree too, may be used in evidence against them. But even admit it were the case, where a recovery against the principal is a pre-requisite to the commencement of an action against the security, as in the case of a creditor suing an administrator; upon principle and analogy, the decision should be the same. The interest is direct; as by defeating the suit, he discharges himself from all claim for its amount. His liability is immediate; as upon failure to make the money of the administrator, his bond may be put in suit. That the bail is an incompetent witness for the defendant, is a principle so universally admitted, that authorities need not be cited to prove it. In 2 *Stark. Ev.* 786, it is laid down as text law, that "where a surety would be immediately liable, in case of decision against the principal, his interest is obvious, and therefore a bail is incompetent in an action against his principal." In what respect

is the bail's responsibility more immediate than that of a se-curity in an administration bond, where his principal is sued by a creditor? After judgment, and a return of a *non est* to *ca. sa.* and not before, can process be had against the bail. After judgment, a return of *nulla bona* upon a *fi. fa.* and not before, can you sue the security, in an administration bond. If the verdict be for the defendant, the bail is abso-lutely discharged from all liability for the debt sued for—if for the defendant administrator, his security is equally so. But the bail has this obvious advantage; his liability is not absolutely fixed and certain. At any time before, or with-in a few days after the return of the *scire facias* against him, he may surrender his principal, and thereby is abso-lutely discharged. Not so with the security in an admin-istration bond; he has no such means of self-exoneration. But the present is a much stronger case, than even that of bail or surety in an administration bond, the administrator being sued by a creditor. Here if the plaintiff had any cause of action, the liability of the surety was fixed, and certain, and his only means of exonerating himself, was by defeating the claim of the plaintiff. Is it possible he can be deemed a competent witness for that purpose? Without vio-lating all analogies, and the best established rules of evi-dence upon this subject, we think the testimony of the se-curities in the administration now before us, cannot be re-ceived. That the views of this court have heretofore been in accordance with the present determination, we think in-ferable, from their opinions in the cases of *Seegar, Ex'rs vs. the State use of Betton,* 6 *Harr. and Johns.* 162, and *Fergusson vs. Cappeau's Adm'r,* 6 *Harr. and Johns.* 394.

A liability for costs of suit renders a witness incompe-tent. In a suit by an indorsee against an accommodation indorser, the maker of the note is not a competent witness for the indorser; because in defeating the suit, he dischar-ges himself from the costs, for which he would be answer-able, in case judgment were rendered against the indorser. Or to speak more immediately on the facts before us, if a

suit were instituted on the administration bond against the surety, the administrator is an incompetent witness for the defendant, his testimony going to exonerate himself from the payment of costs, for which he would be liable to the defendant, in case a recovery were had against him. But if the administrator were sued as in this cause, on his administration bond, for the claim now in litigation, according to the principle now contended for, the security would be a competent witness for the defendant, although by his own testimony, he absolves himself from all liability for the debt, or cause of action. If such be the law, it has neither reason nor justice to sustain it. In *Miller vs. Falconer*, 1 *Campb.* 251, an action on the case for negligence in running against plaintiff's cart, with a dray. The plaintiff's servant, who drove the cart, being called as a witness, was rejected by *Lord Ellenborough*, on the ground, "that the witness certainly comes to discharge himself." In *Morish vs. Foote*, 8 *Taunt.* 454, an action on the case for negligently driving a mail coach against the plaintiff's wagon-horse, whereby it died, the plaintiff's wagoner was rejected for incompetency, as being interested in the event of the suit, inasmuch as "he would be placed in a state of security," by a verdict against the defendant. If in these cases, the witnesses were incompetent, (without a particle of proof showing aught for which an action would lie against them) on the ground that the verdicts to be rendered would "discharge them," "or place them in a state of security;" does not the same objection apply with still stronger force, to the competency of the witnesses, in the record before us. They are interested in the event of the suit, because the decree of the Chancellor, if in favor of the defendant, absolves them from all liability; if against the defendant, it is evidence against them when sued on their bond. *Iglehart vs. State use of Mackubin*, 2 *Gill and Johns.* 235. In *Morton vs. Beall's adm'r*, 2 *Harr. and Gill*, 136, it was determined that the security in a replevin bond, is not a competent witness for the plaintiff in the action of replevin. If the point

there adjudged, be in principle distinguishable from that now under consideration, the shade of distinction is so feint, as to be discernible only by minds peculiarly adapted to the investigation of legal subtilties. Rejecting the testimony of the witnesses in the administration bond, the enquiry presents itself, are there any other grounds upon which the decree of the Chancellor, dismissing the appellant's bill of complaint, can be sustained? That the answer of the defendant with the accompanying exhibits, are sufficient for that purpose, we entertain no doubt. In *May*, 1826, the bill is filed, charging the fraudulent misapplication of the effects of the deceased, and conversion thereof to the defendant's own use, and praying that he may answer the allegations in the bill, and account with the complainant, &c. The defendant at the earliest moment that it could be done, appears in the Chancery Court, files his answer, denies the fraud with which he had been charged, makes a full disclosure of the manner in which he had settled the estate of the deceased, and files copies of the accounts which he had passed with the Orphans Court, and exhibits all the vouchers for which he had obtained credit; although no requisition for that purpose had been made by the complainant. This promptitude and willingness in the defendant, to submit all his proceedings to the inspection of his adversary, and of the Chancellor, strongly repels the imputation of fraud, and entitles him to the favorable consideration of a Court of Equity. Nor do we think, under the circumstances of this case, the proof that he has, in his settlements with the Orphans Court, omitted to charge himself with $355 50, received as dividends on bank stock, and $471, the proceeds of a crop of tobacco from *Thomas Norris*, of *Baltimore*, and his charging in this account No. 19, the whole, instead of the one half of $385, the difference in value between the lots of negroes divided, such conclusive evidence of wilful misconduct on the part of the defendant, as to divest him of all claim to the favor and protection of a Court of Chancery, and so to taint with perjury and

fraud, his accounts and vouchers from the Orphans Court, as utterly to discredit them. The charge of $385, manifestly originated in mistake, as appears by the endorsement on the voucher, on which it is founded, and is an error into which he might very innocently have fallen. The failure to debit himself with the tobacco money received of *Thomas Norris*, appears also to have proceeded from carelessness or forgetfulness, as if fraud had been designed, he furnished the means of its detection, by charging in his account No. 21, against *Edward Collinson's* estate $238 07, the one half of $477 34, the net proceeds of the tobacco, excluding the articles paid for by *Norris*, for *Edward Collinson*. Candor compels us to regard his omitting from his accounts, the $355 50 of bank dividends, as an unintentional act. In accounting as he did for the bank stock, those interested in the estate, were naturally led to an inquiry as to payment of dividends. That a fraudulent concealment was intended, is therefore not to be presumed.

In argument for the appellant, it has been contended, that the proceedings in the Orphans Courts, are not evidence of any thing for the appellee, and that he is bound to prove in this case, not only the actual payment of every claim for which he has received credit, but that such claims were justly due and owing from the intestate. After the solemn decisions made in this State, and reported in *Scott, et ux. vs. Dorsey's Ex'rs*, 1 *Harr. and Johns.* 227. *Spedden vs. The State use of Marshall, and ux.* 3 *Harr. and Johns.* 251. *Gist's adm'r d. b. n. vs. Cockey and Fendall*, 7 *Harr. and Johns.* 134, the doctrine insisted on, is no longer a subject for discussion in our courts. If any principle has been conclusively settled by our decisions, it is, that the accounts settled in the Orphans Courts by executors, administrators, and guardians, are *prima facie* evidence, in all suits touching the matters therein contained, to which such executors, administrators or guardians, are parties; and that the *onus probandi*, rests on him, who seeks to impeach their correctness. The great controversy

relative to such accounts, heretofore has been, not whether they were evidence at all, but whether they were not *conclusive* evidence.

The appellant's counsel next urged that the "vouchers," on which the credits in the Orphans Court were allowed, being produced, and it appearing upon the face of them, that though passed by the Orphans Court, previous to their payment, they were not proved in the manner required by our testamentary system, as a pre-requisite to their passage; that the defendant paid them in his own wrong, and is entitled to no allowance therefor.   The inconsistency and injustice of such a position is so glaring, that it is scarcely necessary to say it is wholly untenable.   The Orphans Courts are the tribunals invested by law, with the power of passing claims against the estates of deceased persons, and the act of assembly of 1798, *ch.* 101, *sub-ch.* 8, *sec.* 22, declares, " that no executor or administrator, shall discharge any claim against the deceased, (otherwise than at his own risk,) unless the same shall be passed by the Orphans Court, granting the administration, or unless the said claim be proved according to the following rules."   The irresistible inference is, that if an executor or administrator, *bona fide*, without any knowledge of its injustice, pay a claim, thus passed or proved, that the payment is not made at his risk.   To a credit for such a payment, under such circumstances, he is not only *prima facie* entitled, but his right to it, cannot be controverted.   It has also been insisted, that admitting the settlements made with the Orphans Court, are *prima facie* evidence, to sustain the credits for all payments made, in satisfaction of debts due third persons, yet they are no evidence to support an allowance made to the administrator for his own claim.   This court can see nothing to warrant such a discrimination.   In the act of 1798, *ch.* 101, *sub-ch.* 8, *sec.* 19, it is stated, " that in no case shall an executor or administrator, be allowed to retain for his own claim against the deceased, unless the same be passed by the Orphans Court, and every such

claim shall stand on equal footing with other claims of the
same nature." As full power is delegated to the Orphans
Court, to allow an account of an executor or administrator,
against the deceased, as if a like claim had been preferred
by any other person. The claims of an administrator in
this case, in common with all other claims against the de-
ceased, being accredited to him in the settlement of his ac-
counts with the Orphans Courts, such accounts must be re-
garded by us, as the acts of a court of competent jurisdic-
tion, but whose proceedings being wholly *ex-parte*, are not
conclusive, but rest on the principle that, " *omnia rite
acta fuisse presumunter, donec probitur in contrarium.*"
With the vouchers all before him, the appellant has not at-
tempted to offer any testimony, (although several commis-
sions were issued, giving him that opportunity) to impeach
or discredit any of them; but founds his objections, exclu-
sively on suggestions arising on their inspection. This is
a strong circumstance to repel the allegation of fraud,
which has been urged against the appellee. He was guilty
of no concealments with regard to the credits which have
been allowed him, but furnished the Orphans Court with
the same grounds for suspecting and rejecting his vouchers,
which he so promptly afforded the appellant. It cannot be
denied, that if it appear on the face of a voucher, that it is
not a just claim against the deceased; it is as much the duty
of a court of equity to reject it, as if the illegality of its
allowance were established by proof *dehors.* Looking to
vouchers Nos. 13 and 16, independently of any proof in the
cause, or admission of the counsel on record, it must be ad-
mitted that the Orphans Court erred, in allowing the ad-
ministrators credits for their whole amount; because they
show debts due by *Edward* and *John Collinson*, and not by
*Edward* alone. But it cannot be denied, that if the whole
of those claims were paid by *John*, after *Edward's* death,
that the Orphans Court would be justified in crediting
*John* with a moiety of the amounts paid by him, upon the
ground that *Edward* and *John*, being both principal debt-

ors, if one pay the whole, he can either at law or in equity, call upon the other to contribute, and thus recover a moiety of what he had paid; but connecting the admission made by the appellant's counsel, that the signatures to the notes, are in the hand-writing of *Edward Collinson*, the Court of Chancery were right in crediting the administrator with the whole payment made on those notes, it not appearing that *Edward Collinson* had any authority to sign the name of *John;* he is the debtor, being alone answerable for the payment of the notes. In thus considering the case, we put out of view all the testimony taken by the appellee to sustain his vouchers, upon the objections to its admissibility raised by the appellant, on the ground that the whole of it must be suppressed, as being given in answer to leading interrogatories, and that *William Collinson* and *Edward C. Harper*, being securities in the administration bond, are incompetent witnesses. But it is insisted on in behalf of the appellants, that these claims, and also No. 18, were debts due by *Edward* and *John Collinson*, under a general partnership, subsisting between them, and that *John* is not entitled to claim a moiety of any particular partnership debt, he may pay; but his claim, if any, must be for the balance due on a final settlement between the partners of the partnership concerns, or upon a full exhibition of all their company transactions, and thus ascertaining the general balance, to the payment whereof he is entitled. Upon what does the appellant rely for establishing the fact, that a general partnership existed between *Edward* and *John Collinson.* He has offered no evidence for that purpose, and he can insist on it only in two ways. *First,* that it is proved by the testimony taken by the defendant in support of his defence, or that the defendant had stated it in his answer, (though in a part not responsive to the bill.) If he relies upon the proof to which he has objected, he waives his objection to its competency; his whole equity is disproved, and he has nothing in the record to give him a moment's standing before this court. If he relies upon the defendant's answer,

his predicament is equally deplorable. The whole equity of the bill is sworn away, and he has nothing to sustain it, which could produce any possible change in the decree of the Chancellor. Upon whatever grounds, therefore, the appellant may choose to rest his case, the vouchers Nos. 13 and 16 are sustained; but if he repudiates the answer and suppresses the appellee's testimony, taken under the commissions, he is entitled to claim a deduction of one-half from voucher No. 18, amounting to $235 19, which being added to the one-half of $385, and the amount of bank dividends, and the price of the crop of tobacco of 1823, received by *John Collinson*, will make the sum of $1260 53, which amount is properly chargeable against the administrator, and being deducted from $4077 80, the amount of the estate over paid, as per auditor's statement of the 31st May, 1828, will leave the estate overpaid by the sum of $2817 27. As to objection to vouchers Nos. 13 and 18, that the receipts thereon were signed by *Nathaniel Chew* of *John*, for *Nathaniel Chew* of *Joseph*, and that the appellee has adduced no proof to show an authority in the former to act for the latter, we have only to observe, that by allowing credits for these claims, the Orphans Court have recognized the validity of those receipts, which recognition has been supported by the oath of the administrator, that he has paid the creditor; and that fortified too, by the possession and production of the note, and account, with the receipts thereon. Under such circumstances, and in the absence of all proof on the subject on the part of the appellant, we are not bound, and certainly feel no disposition to doubt the authority of the agent.

**DECREE AFFIRMED.**