## Elizabeth Lee *vs.* Stephen Lee, and Robert Welch of Ben.—*December,* 1834.

An executor in finishing the growing crops of the deceased, is not bound to discharge the duties of an overseer. He may employ and pay out of the assets in his hands, as many overseers as are necessary for the completion and preservation of the crops. If with more advantage to the estate he acts in the capacity of an overseer himself, it is competent for the Orphans court to allow him a reasonable compensation for his services.

When a claim of an executor for compensation for services rendered the deceased's estate as overseer after the testator's death, is contested before payment, its passage by the Orphans court is no evidence of its correctness. It must then be supported by testimony, substantially sufficient to establish the facts before a jury.

No action will lie to recover compensation for services performed, where with a view to a voluntary legacy, the services were rendered by the plaintiff without any expectation of being paid the value thereof, or any promise of remuneration, expressed or implied.

When there were two joint executors, and the will as to one of them, declared that he should not be allowed any commission as executor, in consideration of the provision made for him in the will, the Orphans court cannot allow more than one half of the *maximum* rate of commission to the other executor.

Cross Appeals from the Orphans court of *Anne Arundel* county.

A petition was filed by *Elizabeth Lee* in the Orphans court of *Anne Arundel* county, on the 16th of September, 1834, representing that her husband *Stephen Lee,* died in the month of January, 1833, leaving a considerable real and personal estate, the whole of which he devised and bequeathed to her during her single life, subject to the payment of certain legacies out of the profits thereof.

That by a codicil to his will, he appointed the appellees, his executors, with a direction, that one of them (*Lee*) should not be allowed any commission as such, in consideration of the provision made for him by the will. The petitioner then complains of two allowances made to the executors in their final account. One for the sum of $961 43, and the other for 350 18, both retained by the executor *Lee,* as debts due him individually, from the estate of the said testator.

She charges the same to be improper allowances, and prays that the accounts may be re-examined, and the objectionable credit stricken out.

The defendants by their answer, admit the death, and the disposition of the testator's estate, as alleged in the petition, and state that the credits objected to by the petitioner are for claims due the defendant *Lee.* The first for $961 43, for services rendered the testator in his life-time, in the superintendence of his farms, from August, 1826, to the period of his death, in January, 1833, at the rate of $150 per annum. The other for $350 18, being for services rendered and expenses incurred by the same party, in the cultivation and preservation of the crops made on the testator's farms in 1833, the year he died. The answer insisted that the services were fairly worth the money charged, and that the accounts have been passed by the court, and are still due. After some depositions had been taken, and filed by the parties, the Orphans court, on the 7th of October, 1834, passed their order rejecting the larger claim, for services rendered in the testator's life-time, upon the ground that the proof did not support it; but admitting the smaller claim, as a reasonable compensation for the management of the estate of the testator the year of his death.

The court also directed that the executor, *Welch*, be allowed a commission of *eight per cent.* on the inventory, and *five per cent.* on the amount of debts due the estate, and collected by the executors; the proof being, as alleged by the court in their order, that the settlement of the estate had principally devolved on said *Welch.*

An account was stated by the register in conformity with this order; the exceptions to which, were afterwards, on the 25th of November, 1834, overruled, and the account ratified and passed.

The appellant, *Elizabeth Lee,* appealed from the allowance of the item of $350 18, to the executor, *Stephen L. Lee,* who appealed from the disallowance of his claim for $961 43; and both the said parties appealed from the allow-

ance of the commissioners to the executor, *Robert Welch* of
*Ben.*

The cause came on to be argued before BUCHANAN, Ch.
J., and STEPHEN, DORSEY, and CHAMBERS, J's.

*Pinkney*, for *Elizabeth Lee*, contended,

1st. That by the true construction of the will, the exec-
utor, *Stephen L. Lee,* is not entitled to charge for any servi-
ces rendered by him as executor.

2d. That he cannot charge for attending the crops grow-
ing at the time of the testator's death.   Act of 1798, *ch.* 101,
*sub-ch.* 6, *sec.* 12.

3d. That *Robert Welch of Ben.*, the other executor is
only entitled to half the commission to which the executors
would have been entitled in the absence of that clause in the
will excluding the other executor.   2 *Strange,* 728.

4th. That the claim for $950 was properly rejected, the
proof being, that the claimant rendered the alleged services
with a view to satisfaction by legacy, or testamentary pro-
vision, and not to compensation in wages.   7 *Ves.* 261.

*Alexander*, for *Welch*, contended,

1st. That the Orphans court did right in allowing *Welch*
a commission proportioned to the value of the services ren-
dered by him, as one of the executors.

2d. That the propriety of the particular allowance made
to this executor (being within the limits prescribed by law)
is not a subject proper to be inquired into by this court.   1
*Peters,* 565.   4 *Harr. and Johns.* 12, 275.   1 *Harr. and
Gill.* 84,   4 *Gill and Johns.* 460.

3d. That if the Orphans court erred in apportioning the
commission to each executor, according to the degree of care
and diligence bestowed by each in the execution of his trust,
then a like error has been committed in allowing to *Stephen
L. Lee*, the other executor, the whole of the compensation
for securing the crop; and the accounts ought to be correct-

ed, by allowing to the appellee a moiety of the sum allowed for securing the crop, and five per cent. on the inventory.

*Randall*, for *Stephen L. Lee*, insisted,

1st. That the claim for services rendered the testator during his life-time, should have been allowed, as the fact of their rendition and value was proved, and an express contract to support the claim is not required. The act of 1798, *ch*. 101, *sub-ch*. 8, *sec*. 19, places the claims of executors and others upon the same footing. These services were rendered with the knowledge and consent of the testator, and an express contract for compensation was not necessary. 3 *Johns. Rep.* 199. They were not designed as a mere courtesy, but were rendered with a view to compensation, and will support an *assumpsit*. 2 *Com. Con.* 406. 1 *Esp. Rep.* 189. 4 *Dallas*, 111, 130. 1 *Yates' Rep.* 209. 13 *Johns. Rep.* 380. 4 *Yates*, 354. The legacy will not be regarded as a satisfaction of the debt, the leaning of the courts is against that, unless the intention is perfectly manifest. 1 *Pr. Wms.* 410. 3 *Ves.* 466.

2. The claim for services rendered subsequent to the death of the testator, in securing the crops, the proceeds of which contributed to swell the estate, is clearly admissible, independently of the action of the Orphans court, by whom the account has been examined and directed to be paid.

3. The allowance to *Welch* is erroneous, as it exceeds the one-half of the *maximum*, of the commission to which executors and administrators are entitled; it having been the design of the testator, in excluding *Lee* from commissions, that his half should fall into the *residuum* of the estate.

Dorsey, J. delivered the opinion of the court.

An agreement having been filed by the parties, that the record be so amended as to remove all objection as to the time and manner of taking the appeal; the only question before us is, did the Orphans court err in ordering their register to credit *Stephen Lee*, with his account of $350 18, exhibit-

ed in the record of the proceedings in this case. It has been argued on both sides, as if this account presented a claim for services rendered in finishing and securing the growing crop on the lands of the testator at the time of his death. And it is resisted on the part of the appellant, on the ground that it was the duty of the executors to finish the crop begun by the deceased, and that the Orphans court are not authorised to allow them, or either of them any compensation for their personal services, otherwise than as they are compensated in their allowance of commission.

In this resistance, on the ground on which it has been made, we cannot agree with the appellant. An executor in finishing the crop of the deceased, is not bound to discharge the duties of an overseer. To impose on him such a duty, would be virtually, to exclude from that office most persons whose services it would be desirable to engage in that capacity. Suppose the deceased was the owner of many farms, and in different sections of the State, on all of which valuable crops were growing, which it was the interest of the estate that the executor should complete; is he bound, should it be practicable, to officiate as an overseer on every farm? Certainly not. No duties so unreasonable are imposed on him by the law. He may employ and pay out of the assets in his hands as many overseers as are necessary for the completion and preservation of the crops. If with more advantage to the estate, he acts in the capacity of an overseer, himself, it is competent for the Orphans court to allow him a reasonable compensation for his services. But the present claim appears before us under circumstances which enlist for it no favorable consideration from the court. The executor according to an account filed with that now under examination, claims from his father's estate $961 43, for wages as overseer from the 28th of August, 1826, to 25th of January, 1833, at $150 per annum. But as overseer from his father's death, on the 26th of January, 1833, to the 31st of December, 1833, he charges $300.

Thus claiming for his services for eleven months and five days, as much as he had ever done before for two years' discharge of the same duties. And these services it is contended, we ought to presume were rendered in finishing a crop begun before the 25th of January, 1833. Of what could the crop in the nature of things have consisted? Why of wheat and rye sown in the fall of 1832, and which an overseer should have had ready for market before the 1st of October, 1833. The appellee, *Lee*, then calls on us to allow him for about eight months' service, or rather for three months, (for until the rye and wheat were fit for harvesting, no overseer was necessary,) *three hundred dollars*, when as appears by the proof, he could find no human being, who could say, that at any antecedent period of his life, his services for a year were worth more than $150. Ought we under such circumstances to be asked to give our sanction to such a claim? But an insuperable obstacle to our allowance of any claim for such services is, that it no where appears upon the record, that the testator left any growing crop. And if it were otherwise, no matter what may have been the growing crop, an insurmountable objection to any allowance presents itself, in the utter absence of any *scintilla* of proof to sustain it. The claim having been contested before payment, its passage by the Orphans court is no evidence of its correctness. It must be supported by testimony substantially sufficient for its establishment before a jury. On this occasion no evidence of any kind was offered. And an inspection of the account itself, and the answer of the appellee, conclusively demonstrate, that there exists no such claim against the estate of the deceased. It was for services as overseer after the death of the testator.

*So much of the decree of the Orphans court of the 7th of October*, 1834, *is reversed, as directs a credit of* $350 10, *to be allowed to the executors in their account.*

Upon the appeal of *Stephen L. Lee*, the only question presented is, as to the propriety of the order of the Orphans court in rejecting the claim of *Stephen L. Lee*, for $961 43, for

services renderd to his father in his life-time. The account has passed the Orphans court upon the affidavit of the claimant alone; but this adds nothing to its intrinsic merits or authenticity, when reviewed as it was by the Orphans court, upon the proceedings before it. It is a claim made by a son on the estate of a deceased father, "for working on, and superintending his farms" for six years, four months, and twenty-seven days, at $150 per annum ; the full value of the son's service according to the testimony of all the witnesses. No credit of any nature or description is given on this account, and it is a fact admitted in the cause, that although the appellant charged for his services from the 28th of August, 1826, down to his father's death, yet that he did not arrive at age until the 17th of November, 1827. It is in proof by a competent witness, that *Stephen L. Lee,* told him some years before his father's death, "that he got whatever money he wanted from *Mr. Owens,* his father's agent in *Baltimore.*" These circumstances, when viewed in connexion, cast a shade of suspicion over the claim, which should impel the court to regard it with the eye of scrutiny and suspicion. In the absence then of all proof that the father, ever by word or deed, promised or held forth an expectation to his son, that he would compensate him for his service, or that the son ever intimated to the father, or any body else, that he intended to claim such compensation, are we at liberty to conclude, that there existed between them a contract for that purpose, either express or implied? When it is expressly proved by the son's own declarations, that he had made no contract with his father, but looked to his father's will, as the source whence his compensation was to flow. It is a case, which to the letter comes within the familiar principles stated by *Ld. Kenyon* in 1 *Esp. Rep.* 108, *Le Sage vs. Consmaker and others, Executors,* that if the services were rendered by the plaintiff "without any view to a reward, but with a view to a legacy, that he could not set up any demand against the testator's estate." The authorities referred to by the appellant's counsel do not impugn the principle upon which

the order of the Orphans court rests for its support. They were cases, where there either was an express promise of reward, or facts from which the promise might be implied. Here no such facts are to be found; and the case therefore comes completely within the well established prnciple of the law, that no action will lie to recover compensation for services preformed, where with a view to a voluntary legacy the services were rendered by the plaintiff without any expectation of being paid the value thereof, or any promise of remuneration, express or implied.

*The order of the Orphans court, so far as concerns the subject matter of this appeal, is affirmed with costs.*

On the appeal of *Elizabeth Lee,* and *Stephen L. Lee,* against *Robert Welsh of Ben,* the court decreed that so much of the order of the Orphans court as allowed to the said *Welsh* a commission of eight per cent. on the inventory, be reversed with costs, and the record was remanded to the Orphans court, with directions to have the account stated accordingly.