GIDEON BANTZ, Executor of ANN M. BANTZ *vs.*
WILLIAM S. BANTZ, THEODORE S. BANTZ, and
others.  WILLIAM S. BANTZ, THEODORE S. BANTZ,
and others *vs.* GIDEON BANTZ, Executor of ANN
M. BANTZ.

*Accounts of an Executor or administrator subject to Revision*
*and correction in the Orphans' Court—Passage of a Claim*
*by the Orphans' Court against a Decedent's estate—Claim by*
*an Executor to be allowed for Services rendered his Testatrix*
*in her life-time—Right of parties interested in Decedent's*
*estate, to object to such Claim—What is a reasonable Time*
*within which a motion for a Revision and Correction of an*
*Executor's account may be made—Parties not excluded as*
*Witnesses, under the Act of 1864, ch. 109, and its Supple-*
*ments—Improper claim by an Executor—What necessary to*
*Justify a claim for Services rendered a Deceased person—*
*Costs in the Orphans' Court discretionary under Art. 93, sec.*
*250, of the Code—Proper allowances to an Executor.*

So long as the estate of a decedent is open, that is, not finally closed
and settled, the accounts of the executor or administrator in the
Orphans' Court, are subject to revision and correction in respect of
any matter discovered to be erroneous.

The simple passage of a claim against a decedent's estate by the
Orphans' Court, or the passage and approval of an account retain-
ing for it, does not establish the correctness of either.

The passage of a claim by the Orphans' Court, does not bind the exe-
cutor to pay it; he may still resist it, and the claimant is put to his
proof.

Parties interested in the distribution of a deceased's estate, may, in a
proper way, and within a reasonable time, object to the propriety of
a claim preferred by the executor of the deceased for services ren-
dered her, in her life-time, although it has been passed upon and
allowed *ex parte*, by the Orphans' Court, and included by the exe-
cutor in his account.

Bantz, Ex'r *vs.* Bantz, *et al.*

An executor preferred a claim, in his own behalf, against his testatrix for services rendered her, in her life-time, and included it in his first administration account dated the 15th of December, 1874, which was passed, and approved by the Orphans' Court. The inclusion of this claim in his account gave the appearance of an over-payment of the estate. This over-payment was brought forward successively in each of the two following accounts as a matter for allowance. The third account was passed on the 27th of April, 1878, and within ten days thereafter, an application by parties interested in the distribution of the estate, was made for a revision, and to strike out. HELD :

That this was a reasonable time within which to seek a correction of the errors and improper charges of the executor.

Parties interested as devisees under the will, in the distribution of the estate of a deceased person, are not excluded under the Act of 1864, ch. 109, and the supplements thereto, from testifying adversely to a claim made by the executor of the estate, which he seeks to have allowed, for services rendered his testatrix.

An executor cannot rightly claim to be allowed out of the estate of his testatrix, his mother, for the cost of renovating, and removing to another place, the tombstones of the grand-parents of himself and other devisees under the will.

To justify a claim against a deceased's estate for services rendered the deceased, it must appear that there was a design, at the time of the rendition, to charge, and an expectation on the part of the recipient to pay, for the services. There must have been an express or implied understanding between the parties that a charge for the services was to be made, and to be met by payment.

The awarding of costs in a litigation in the Orphans' Court, is, under sec. 250 of Art. 93 of the Code, altogether in the discretion of the Court, and is not reviewable on appeal.

An executor may rightly claim to be allowed out of the estate of his testatrix for fertilizers furnished by himself, to her in her life-time.

Where a farm, part of the estate of a deceased person, is, under the will, in the hands of her executor for sale, and is managed by him, and he charges himself with all the proceeds of the crops raised thereon, he is entitled to be allowed out of the estate for fertilizers used in their production.

CROSS-APPEALS from the Orphans' Court of Frederick County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY, ROBINSON and IRVING, J.

*John Ritchie,* for Gideon Bantz, the executor.

*James McSherry* and *Milton G. Urner,* for William S. Bantz, and others.

IRVING, J., delivered the opinion of the Court.

In the autumn of 1873, Mrs. Ann M. Bantz, of Frederick County, died leaving a will, in which her son, Gideon Bantz, was appointed executor. He accepted the trust, and proceeded to administer the estate. He passed three administration accounts, dated respectively on the 15th of December, 1874, the 29th of November, 1876, and the 27th of April, 1878.

At the time of passing the third account, he made distribution of the balance, which his accounts showed to be in his hands, among the devisees under the will; but this distribution was not made under the order of the Orphans' Court, and was not made after notice to persons interested as required by the Code. On the 10th day of May, 1878, the devisees under the will of Mrs. Bantz, filed a petition in the Orphans' Court, wherein said accounts had been passed, alleging the existence of sundry errors in the executor's accounts, and charging that sundry claims and allowances had been made to the executor, which were not proper charges against the estate, and ought to be stricken from his accounts; and praying for the several accounts to be set aside, and a new account to be stated, in which the items objected to should be disallowed. After answer and proof, the Orphans' Court set aside all the accounts of the executor, and ordered a new account to be stated, wherein some of the items

Bantz, Ex'r *vs.* Bantz, *et al.*

objected to by the petitioners should be excluded, but others should be included and allowed. From this order of the 4th day of March, 1879, both parties have appealed, and it is the subject-matter of these cross-appeals, which we are now to consider. The first question for our decision, relates to the right of the petitioners to file their petition, by way of exception to the executor's administration accounts, when they did, and the right of the Orphans' Court to hear and determine the objections of the petitioners, so, and then interposed. The appellant, (the executor,) contends that the special claims, to the striking out and disallowance of which by the Court, he excepts, and from which he appeals, had been passed upon by the Court, and allowed to him too long, without objection on the part of the petitioners ; and he is to be regarded as having paid the claims to himself; and that the petitioners were guilty of fatal *laches* in the premises. The counsel for the appellants concede that errors should be corrected, and assent to certain corrections ordered by the Court; but insist, that the account of the executor, for services rendered the testatrix for nineteen years preceding her death, and the claim for allowance on account of renovating the tomb of his, and the petitioners' grand-parents, cannot now be attacked. We do not think the cases of *Donaldson's Ex'rs vs. Raborg, Adm'x d. b. n.,* 28 *Md.,* 34, and *Owens vs. Collinson,* 3 *G. & J.,* 25, sustain this position. Both those cases recognize the accounts as only *prima facie* right, but liable to be attacked with proof against them ; and in cases of *great lapse* of time, and when the executor was dead, the Court held that strong proof would be required to overthrow the accounts. The Orphans' Court is the proper and primary tribunal, (although sometimes a Court of equity is invoked,) to determine all such controversies, and this Court has repeatedly said, that so long as an estate is open, (which means not finally closed and settled,) the accounts of the

44                    v. 52.

executor or administrator, in that Court, are subject to revision and correction as to any matter discovered to be in error. *Edelin vs. Edelin,* 11 *Md.,* 415, and *Stratton's Case,* 46 *Md.,* 551.

The simple passage of a claim against the estate, or the passage and approval of an account retaining for it, does not establish the correctness of either. The most that it accomplishes is to protect the administrator or executor, if he actually pays it without knowledge of its incorrectness. Passage of a claim by the Orphans' Court, does not bind the executor to pay it; he may still resist it, and the claimant is put to his proof. Here, the claim for services is preferred by the executor against the testatrix, with no one to object but the petitioners. He is his own paymaster, and because he has chosen to put it into his accounts, and gotten the *ex parte* approval of the Orphans' Court to it, it is clear that he ought not, until the estate is wholly closed, to be regarded in the same light, as if, on the faith of the Court's approval, he had paid a stranger his claim against the estate; but the persons interested in the estate and its distribution ought to be permitted, in a proper way, and within proper time, to make their objections to the propriety of his claim. We think this application was within proper time. The claim alluded to was only passed by the Court three days before the passage and approval of the first administration account.

The inclusion of that claim in the account created the appearance of an over-payment of the estate; but it was only apparent. That over-payment was brought forward in each of the other accounts, as a matter for allowance successively. After the third, a distribution was struck, and then came the application for revision. The third account was passed on the 27th day of April, 1878, and the application for revision and to strike out, was made within ten days thereafter. This was certainly a reason-

able time within which to seek a correction of the errors and improper charges of the executor. The last account was based on the others, and in fact the claim of the executor, in the form of a charge for over-payment, was actually made in, and allowed by the last account. The distribution was wholly an act of the executor. It does not profess to be made by the Court, and after the notice required by the Code. The estate is so far open as to admit the investigation sought by the petitioners. Whether the Orphans' Court ruled correctly, will be considered presently.

We must first dispose of some questions of evidence. It was objected on the part of the executor, that the petitioners were incompetent witnesses to impeach his claim. The Orphans' Court overruled this objection, and we think that decision right.

The petitioners are clearly not excluded as witnesses by the Act of 1864 and supplements, unless they fall within some of the exceptions of the said Act or its supplements, and are thereby excluded. Those exceptions relate to the case of the death of an original party to a contract or cause of action, or to his insanity, or to cases where an executor is a party to the suit, in either of which cases the other party is excluded. The petitioners were certainly in no sense parties to the contract. This proceeding is not for the purpose of enforcing a charge against the executor, as executor, of the estate. It is a proceeding by which an executor is sought to be prevented from retaining for his own claim against the estate; which claim is alleged to be unjust, and not due and owing, by the testatrix. If it were a claim of another person against the executor, these parties would undeniably be competent to testify adversely to the claim.

There is, therefore, no reason why in this case they should not be competent. The executor, *as such*, and the

executor, *as creditor* of the deceased, must be regarded for the purposes of this decision as different persons.

These witnesses appear against him not as executor, but as creditor of the estate seeking payment, and as if seeking payment from one other than himself, clothed with power to pay. The fact, that the executor and the claimant are one and the same person, cannot work an exclusion which would not otherwise exist. The statute never contemplated any such result. The statute contemplated suits or proceedings against an executor for the purpose of enforcing a claim against the estate, not of resisting a claim of the executor, as this case is. There is no ground for applying the rule as one of mutuality, which this Court has so often said was the object of the statute.

Certain declarations and admissions of the appellant, Gideon Bantz, touching his services to his mother, made to Albert Gallion, were given in evidence by the petitioners. Gideon Bantz, on his own offer, was produced as a witness to contradict Gallion as to those statements. Objection being made, the Court held, that being a party to the alleged contract, and the other party being dead, he was incompetent. To this ruling exception was taken. We intimate no opinion on this question. It is unnecessary to the decision of this case, and being an important question, it may properly be reserved for further consideration and future decision, if the question should arise again where it is important. Here, according to the view we take of the other proof in the cause, it is immaterial whether he would contradict Gallion in that particular or not; assuming that he would unqualifiedly do so, there is enough proof in the cause to control the decision of it, exclusive of Gallion's statement in that regard. The other exceptions to testimony on both sides are also immaterial, and therefore we do not consider them.

Respecting the claim on the part of the executor for the renovation of the tombstones of the grand-parents of .

himself and the petitioners, and their removal to another place, it is sufficient to say, that such claim is not a legitimate charge against the testatrix's estate. It is not pretended to be a debt due by the decedent, and it is as certainly not embraced within funeral charges of the deceased, or administration expenses. Properly speaking, therefore, it was not a charge for which the executor had a right to claim allowance for paying. However meritorious in itself the charge may be, as against the petitioners for their proportion of it, no such proof has been presented as works an estoppel upon them from objecting to its allowance. As a claim against the estate it cannot be admitted into the accounts of the executor and be allowed to him. The Orphans' Court therefore did right in striking it from the account. The action of the Court in respect to the claim of Gideon Bantz, for services rendered the testatrix in her life-time, was in our opinion equally proper.

In *Guild vs. Guild*, 15 *Pickering*, 129, the jury were instructed, "that if under *all the circumstances of the case* the services were of such a character as to lead to a reasonable belief, that it was *the understanding* of the parties that pecuniary compensation should be made for them, then they might find an implied promise and *quantum meruit.*" The case of *Lee vs. Lee and Welch*, 6 *G. & J.*, 316, and *Stockett vs. Jones and Wife*, 10 *G. & J.*, 276, proceed upon the same principle. In order to justify a claim for services being allowed against a decedent, there must have been a design, at the time of the rendition, to charge, and an expectation on the part of the recipient to pay for the services. The services must have been of such character, and rendered under such circumstances, as to fairly imply an understanding of payment, and a promise to pay. There must have been an express, or implied understanding between the parties that a charge for the services was to be made, and to be met by payment. This Court has

said in *Lee vs. Lee and Welch,* 6 *G. & J.,* 316, that it is familiar law, that if services are rendered with the expectation of compensation by will, a charge cannot afterwards be preferred against the person for them. This claim is unquestionably suspicious on its face. It is for nineteen years service. It is the account of a man who had large dealings with the alleged debtor, and through whose hands large sums of the alleged debtor's money were continually passing, from which, in settlements, he could have retained his pay. It is in proof, that a settlement was had a short time prior to her death, and no mention of any such claim appears to have been made; and if it were, it would afford evidence of payment in that settlement. It is in proof, that the claimant was in need of advances, and was from time to time receiving advances from his mother, for which he was charged, that it might be deducted from his share of the estate. During the period covered by this charge for services, he received three thousand dollars in money, by way of advancement. If, at that time, he had intended his services to be anything more than filial and dutiful service, and intended to make a regular charge for them, and actually had a claim and charge against his mother, he would have received the money as payment and not as advancement. She was entitled to be credited on what she owed him, if she did owe him. It is clear, that she did not think she was in his debt, or she would not have charged him with the money he got, as advances. She would have paid her debts. If it were a real debt, the creditor would be entitled to interest, and the debtor liable to pay it. In the claim he has preferred, he has not charged interest; but if she supposed he had a claim against her, she would naturally think it was drawing interest, and would stop it by payment. It is not denied that the claimant did do many frequent and most useful services for his mother, as a considerate and loving son would do; whereby, no

doubt, the estate was increased; and it would have been very natural if he had thought he was by that means most likely benefitting himself; but we see nothing in the proof, tending to show an expectation, on *his part*, to make a charge, and be paid accordingly, or on her part of expectation, that she was to pay for the services, as for services rendered by any other person. The only declarations made by the testatrix, offered in evidence, (which are very few, considering the period covered by the services,) certainly imply, that there was no understanding on the subject; on the contrary would indicate, that the mother had no idea he was making a charge against her. They indicate appreciation of his attention to her and her business; but they exclude the idea in her mind that he was making a charge for the service. In view of the service, its character, its duration, the conduct of the parties, the fact that no information was ever given the testatrix of intention to charge, that no price was fixed till after her death, his consultation with the Court as to what he ought to charge, and the statement a few days after her death, that he thought he ought to be paid something, we cannot think the declaration of the mother, at one time, that he "should not be the *loser*," and at another, that he "should be *well* paid," could have any reference to any payment other than by gratuity by will. That he so understood it, is irresistibly indicated by the lapse of time he permitted to pass without hinting a purpose to charge for it.

If it had been his purpose to charge her, as for similar services to other people, he would not have allowed so long a period to elapse without an agreement fixing his right to be paid and the amount he was to receive. He would not have left it to be wholly settled after her death.

He would not have risked the danger of resistance to such claim from those who might become entitled to the estate at her death, and whose interest it would be to

resist it. His admission to one of the parties that he gave no notice of such claim, and withheld it till it was passed and put in the account, because he "knew that they would object" to the claim, is strong proof that he was making an unexpected claim, and that this was the reason why it should not be expected to be made. The statement to Mr. Getzendanner a day or two after his mother's death, that "he thought he ought to have something," fairly implies that he was disappointed in some way, and for the first time began thinking of getting paid in this way, and that in his mother's life-time he had not expected to charge for his services.

The decision of the Orphans' Court, therefore, so far as the appeal of Gideon Bantz is concerned, will not be disturbed.

In the cross-appeal of the petitioners, complaint is made, in their prayer of appeal, of the action of the Orphans' Court, 1st, in allowing the claim of $112.50 for fertilizers furnished while the farm was in the hands of the executor and being managed by him. 2nd, of the $100 for the fertilizer in the executor's individual account against the deceased. 3rd, of the $1200 allowed for a monument for the deceased, purchased by the executor. And 4th, for the imposition of the costs of the investigation upon the estate instead of the said Gideon Bantz personally. So far as the question of costs is concerned, the whole matter was in the discretion of the Orphans' Court under section 250 of Article 93 of the Code, and is not reviewable in this Court.

With reference to the fertilizer included in the executor's account against the decedent, we see no sufficient reason to disapprove that allowance. Independent of his own affidavit, there was proof of his furnishing the fertilizer, and the value of it was, we think, sufficiently vouched. We think the Court was right in allowing the other fertilizer bill. The land was under the will, in the hands

Bantz, Ex'r *vs.* Bantz, *et al.*

of the executor for sale. Until the sale was made, he managed the estate, and charged himself with all the proceeds of crops raised on the farm ; and it is but right that he should be allowed for the expenses incident to the production of the crops. The proof introduced to impeach the correctness of the bill, is not by any means conclusive in its character, but is very vague. We see nothing to justify a reversal of the decision of the Orphans' Court in this particular.

The only remaining question presented by the prayer of appeal, relates to the allowance claimed by and allowed to the executor, by the Court for a monument over the deceased. Notwithstanding this was included in the prayer of appeal, it is not considered or alluded to in the brief of the cross-appellants, and in the recapitulation of the amounts wherein they claim to be damnified by the ruling of the Orphans' Court, and the arithmetical summary by which they exhibit the amount of loss occasioned by the erroneous charges of the executor, the allowance for a monument is wholly excluded. We assume therefore, that they concluded to acquiesce in that allowance, and abandon that objection. The questions presented thereby, therefore, we do not consider.

The decision of the Orphans' Court respecting the matters covered by both appeals will be affirmed, and each party will be required to pay his own costs.

*Order affirmed, each party*
*to pay his own costs.*