## JOHN TURNER and GEORGE PETERSON, EXC'RS of GEORGE PETERSON, *vs.* GEORGE ELLICOTT.

To make the bar under the act of 1798, ch. 101, sub-ch. 9, sec. 18, effectual, the claim must be presented to the executor by the claimant or his *authorised agent,* and a prayer which does not submit to the jury to find the authority of the agent to present the claim, is defective.

A prayer cannot *assume* any fact when the *onus* of proving such fact rests upon the party asking the instruction, no matter how clear his proof on the subject may be.

An acknowledgment by defendant that he owed the plaintiff " a *large sum of money* for the education and support of his granddaughter, A. J., and that he would pay it as soon as he sold his crops," is sufficient to remove the bar of the statute of limitations, and the plaintiff may recover whatever amount he can establish *by proof* was due on such account.

In this State it is not necessary that the acknowledgment or promise to remove the bar of the statute should specify any *particular amount,* nor need the claimant exhibit at the time the evidence, or state the precise nature or amount of the claim, these being facts to be found by the jury according to the evidence in the case.

Peterson's Exc'rs *vs.* Ellicott.

Where the presumption asked by a prayer to be drawn is only one of *fact*, and not of law imperatively binding upon the jury, an instruction that if the jury believed the facts stated in it "then they may and *ought* to find for the defendant," is erroneous, because the term "*ought*," makes it *imperative* upon the jury so to find.

APPEAL from the Circuit Court for Anne Arundel county.

This is the second appeal in this case, the first being reported in 4 *Md. Rep.*, 476. The action was *assumpsit*, brought by the appellee, on the 24th of April 1850, against the appellants, to recover money expended by the plaintiff for the support, maintenance and education of two grandchildren of the testator. The case was tried upon issues to the pleas of:—1st, *non assumpsit;* 2nd, limitations; 3rd, set-off; and 4th, that the plaintiff did not sue within nine months after dispute and rejection of his claim by the executors, as required by the act of 1798, ch. 101, sub-ch. 8, sec. 18. In the course of the trial three exceptions, (Nos. 2, 4 and 6,) were taken by the defendants.

*2nd Exception.* This exception was taken to the refusal of the court, (BREWER, J.,) to grant the defendant's prayer stated in the opinion of this court. The evidence upon which this prayer is based was that of Tongue, a member of the bar of Calvert county, but not a practicing attorney, who states that the plaintiff handed him an account against the estate of the testator, the amount of which he does not recollect, with a request that he would present it to the orphans court of Calvert county, and then place it in the hands of Coleman, an attorney, for collection; that he did present this account to the said court, by whom it was passed, as he thinks, and then offered it to Coleman, who declined to take it because he was counsel for the estate; that he then, on the same day, which was in April or May 1849, presented it to one of the executors, who refused to pay it, and witness then placed the account in the orphans court and considered that his agency had ceased; that afterwards, on the same day, he saw the other executor, who also disputed the account.

*4th Exception.* This exception was taken by the defendants to the refusal of the court to grant their prayer, (which is also

set out in the opinion of this court,) denying that the acknowledgment of the testator, stated in the prayer, was sufficient to remove the bar of the statute of limitations beyond nominal damages for the education and support of the granddaughter. The proof was that Peterson said he owed the plaintiff a large sum of money on account of the board and maintenance of his granddaughter, Anne W. Iglehart, and that he would pay it as soon as he sold his crops.

*6th Exception.* The defendants then offered the following prayer, based upon evidence in the cause: "That if the jury find from the evidence that after the death of Peterson the plaintiff caused an account and affidavits thereon to be presented to the orphans court of Calvert county, and that the copies of this account and affidavits given in evidence are true copies thereof," (this account verified by the affidavit of the plaintiff was for $480, on account of the board, clothing and schooling of the grandson;) "and if the jury further find that at the date of the presentation of said account the plaintiff did not exhibit or claim to hold any account against said Peterson, and that plaintiff has kept no account of the expenses incurred by him on account of the granddaughter, and has no vouchers of any payments made by him of said expenses, and that said Peterson during the period of said granddaughter's minority authorised the plaintiff to receive, and he did receive, the rents of certain property belonging to said Peterson, and also the $200 as stated in the evidence, and that the plaintiff did, during the minority of said granddaughter, send to the said Peterson the unpaid bills for her schooling and boarding in the manner and at the time stated in the evidence, then the jury *may and ought* to find that the plaintiff at the death of said Peterson had no just claim against the said Peterson on account of the education and support of said granddaughter, notwithstanding the jury may find the acknowledgments of said Peterson as given in evidence." This prayer the court refused, and the defendants excepted.

The verdict and judgment were in favor of the plaintiff for $3776.77, damages and costs, and the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLE-
STON and MASON, J.

*Frank H. Stockett* and *Robert J. Brent* for the appellants,
argued :

1st. That in the absence of the plaintiff from Calvert county,
and his having no other agent ·in charge of his account but the
witness Tongue, the rejection by the executors of that account,
when shown to them by Tongue, must be considered as a
rejection, under the circumstances, sufficient to entitle the
executors to rely upon the provision of the act of 1798, ch.
101, sub-ch. 8, sec. 18, inasmuch as it was shown by Tongue
to them in April or May 1849, and this suit was not brought
until the 24th of April 1850, and the language of the act is,
that the claimant shall be *forever barred* unless suit be brought
within *nine months* after such rejection. A party has the
right to *segregate* any facts of the case which he chooses, and
ask of the court the law upon *those facts* alone. 1 *Gill,* 143,
*Whiteford vs. Burckmyer & Adams.* Our prayer in the first
exception does not touch the question of *agency* or *notice,* and
if the other side thought these questions important they should
have framed a *prayer upon them.*

2nd. Our second prayer only asked the court to decide to
what extent the acknowledgments proved could entitle the
plaintiff to a recovery. Where the acknowledgments specify
a certain amount of indebtedness, as in reference to the sup-
port and clothing of the grandson in this case, then it is clear
that the party relying on such acknowledgments must take
them with the amount stated, and if this be true in reference
to a fixed amount, why is it not true where the acknowledg-
ment states a general indebtedness on long running accounts,
in which, as here, the testator is shown to have made divers
payments, and where no *account* was ever rendered to *him* in
his lifetime, and no *vouchers* of expenses paid produced even
now ? How could a jury be set loose, upon such a general
acknowledgment of *some indebtedness,* to speculate and find
a deliberate acknowledgment of the testator to such a *posthu-
mous* account as that sued for ? If a plaintiff goes into court

with no other proof but the admission of the defendant that he owes him money, and *stands alone* on *that admission*, he can recover only *nominal damages*, and so it has always been held. 1 *Pet.*, 355, *Bell vs. Morrison.* 7 *Gill*, 97, *Ellicott vs. Nichols.* 2 *G. & J.*, 301, *Keplinger vs. Griffith.* 1 *Gill*, 172, *Duvall vs. Peach.* 4 *G. & J.*, 509, *Frey vs. Kirk.* 1 *H. & G.*, 209, *Oliver vs. Gray.* 6 *Gill*, 85, *Guy vs. Tams.* 2 *Barn. & Ald.*, 761, *Swan vs. Sowell.* 17 *Maine*, 145, *Pray vs. Garcelon.* 10 *Watts*, 172, *Magee vs. Magee.* 3 *Wend.*, 534, *Stafford vs. Bryan.* *Angell on Lim.*, 254 to 258. And so where the acknowledgment is in reference to a general indebtedness on a running account, with payments and unsettled credits, it would be mischievous and dangerous to allow such an account, barred by limitations, to be revived upon acknowledgments as vague as this, at least, beyond the right to recover nominal damages. 15 *Johns.*, 511, *Sands vs. Geltson.* 9 *Cowen*, 674, *Clarke vs. Dutcher.* 2 *Term Rep.*, 760, *Lloyd vs. Maund.* *Ry. & Moody*, 407, *East India Co. vs. Prince.* If a debtor says that he has never paid the *debt* the law implies a promise to pay,.though accompanied with a refusal to pay. 7 *Gill*, 43, *Carter vs. Cross.* But not so where no account has been shown to the debtor, no note given by him, and the acknowledgment is merely of some indebtedness on some *balance of accounts.* The acknowledgment here is merely that he owed a large sum of money on account of his granddaughter. How much did he thereby intend to acknowledge? $3000 or $3700? There is no amount specified and the acknowledgment is *vague and indeterminate.*

3rd. Our third prayer should have been granted, because of the facts therein set forth casting suspicion over the exorbitant claims of the appellee, especially when we consider the fact that he presented an account to the orphans court verified by his affidavit for only $480. This was splitting up the cause of action to meet the obligation of his oath, if he had in reserve other items of charge, and in case of *contest* would have precluded his recovery for the residue of his claim. 1 *Wend.*, 487, *Miller vs. Covert.* 8 *Do.*, 492, *Guernsey vs. Carver.* 9 *Barn. & Cres.*, 780, *Dunn vs. Murray.* 7 *Bing.*, 716, *Bowden vs. Horne.* When Ellicott

presented his account to the orphans court against the estate of Peterson, and verified it by his affidavit, he ought and was bound by every legal and moral 'obligation to file his *whole account,* and the jury ought to presume that his account so presented was all the claim he then had against the estate. Our prayer is simply the statement of the law upon *prima facie* evidence, upon which a court of equity or a judge would say the presumption was that he had no other claim. A *prima facie* case is, in the absence of rebutting proof, conclusive, and the jury have nothing to do with it, but must respect the *prima facie* evidence thus produced. 6 *Pet.,* 622, *Kelly vs. Jackson, et al.* 14 *Do.,* 334, *United States vs. Wiggins.* The prayer does not say the jury *must* find the plaintiff had no just claim for the support of the granddaughter, but simply that they *may* and *ought* so to find, using the term *ought,* not as a word of *imperative obligation,* but rather in the sense of and as a synonym with *may,* a word of permission and not obligation.

*Thos. S. Alexander* and *Thos. G. Pratt* for the appellee, argued :

1st. That the court properly refused the first prayer of the defendants, as it does not put to the jury to find that the witness Tongue had any authority to exhibit any claim to the defendants, nor that the plaintiff had any notice that the defendants had disputed the claim, nor that the claim supposed to have been exhibited to them by Tongue is identical with the claim or any part of it sued on in this case. The only evidence in relation to the exhibition of any claim to them by Tongue in behalf of the plaintiff is that of Tongue, who distinctly proves that his authority was limited to the presentation of the claim to the orphans court simply, and denies he had any authority to exhibit the claim to the defendants. That the verdict upon the plea joined on the 4th issue being found for the plaintiff, it is now to be assumed as a *fact* that the claim was not exhibited to the defendants, and it is therefore immaterial to inquire what would be the law properly applicable, on the hypothesis that the claim had been exhibited. That the act of 1798, ch. 101, sub-ch. 9, sec. 18, does not

require the absolute rejection of the claim on the failure of the plaintiff to sue within the nine months, but simply that the executor may make distribution of assets as if he had no notice or knowledge of the claim. But it is clear that under this act the claim must be exhibited to the executor by the claimant or some one acting for him. This the prayer takes from the jury, and only requires them to find that Ellicott handed *an* account to Tongue, no matter for what purpose, for safe keeping or any other, and then authorises them from that fact to find the statutory bar. To make this bar available, Tongue must have been the authorised agent of the claimant to present the claim to the executors, but the prayer does not leave it to the jury to find either that he was such agent or that Ellicott had notice of the refusal, which is also necessary. 6 *G. & J.,* 92, *Callis vs. Tolson.* 7 *G. & J.,* 23, *Cole vs. Hebb.* The true construction of the act therefore is not presented by the facts of the case. But if it was the construction is not free from doubt. The sections, preceding and following, all relate to the *protection* of the executor *alone.* The whole context of the statute must be taken together, and it is in this context, relating to the protection of the executor or administrator, that the clause relied on is found. Our view is that it was intended as an *additional* protection to the executor; that is, if he distributes the estate or pays away the assets he shall be protected, but that it does not apply to a case where there are assets in hand. Suppose the case of a mortgage or bond, and the failure of the personal estate, the heirs at law would still be bound, notwithstanding the claim against the personal estate might be barred by this statute.

2nd. The second prayer raises the question, whether the plaintiff, *proving* the original indebtedness of the defendants, may remove the bar of the statute of limitations pleaded against him, by proof of admission by the testator that he owed the plaintiff a large sum of money on account of that dealing, and a promise to pay this sum when he sold his crops? We say the court properly refused the prayer, as the admission of the original cause of indebtedness and the promise to pay generally entitled the plaintiff to show what sum in certainty was due

on such original cause, and that whatever may be the law elsewhere, such is the clearly settled law of this State. 4 *Md. Rep.*, 489, *Ellicott vs. Peterson's Exc'rs.* 6 *Gill*, 82, *Guy vs. Tams.* 1 *H. & G.*, 216, *Oliver vs. Gray.* We do not stand in court simply upon the admission of the testator, but we go in with his acknowledgment to *remove the bar* of the statute and then *prove* our claim. We prove the *original indebtedness*, and that the acknowledgment and promise to pay *relates to this very indebtedness.* We do not rely upon the admissions *as proof of the sum due,* but, having removed the bar of the statute by them, we then prove the extent of our claim by other competent testimony.

3rd. That the court very properly refused the third prayer, because the facts supposed were altogether insufficient as evidence against the additional claim in suit, and proved. But conceding that the defendants were at liberty to argue that no such claim did exist, and that the jury were at liberty so to find, the rejection of the prayer may be supported on the ground that the facts supposed were not absolutely *conclusive* against the claim, and consequently the court could not have instructed the jury that they *ought* to find against the plaintiff. As the prayer stands it is made an *imperative obligation* for the jury so to find from the facts supposed, and it is therefore clearly erroneous.

ECCLESTON, J., delivered the opinion of this court.

The record contains five bills of exceptions. Numbers one and three were taken by the appellee, and numbers two, four and six by the appellants, who were defendants below. Those of the appellants present the questions which we now have to decide; and we begin with the prayer of the defendants, contained in their first exception, which was refused by the court. Its language is: "If the jury believe from the evidence that the plaintiff, prior to the first of June 1849, handed an account to the witness, Tongue, against the estate of John Peterson, and that said account was passed by the orphans court of Calvert county, and then presented by said Tongue to the defendants, or either of them; and if they further find that

when so exhibited the said account was disputed and rejected by the defendants, or either of them, then the claim of the plaintiff on said account is barred, and cannot be recovered in this action, unless the jury find that this suit was brought within nine months after said rejection."

The plaintiff insists that the instruction was rightfully refused, because it does not submit to be found by the jury whether Tongue, as the agent of the plaintiff, was authorised to present the claim to the defendants. It is very certain that if there was no such authority the claim was not barred by the rejection of it, even if every other fact or circumstance enumerated in the prayer should be found or admitted; and, consequently, had the instruction been given the court would, necessarily, have assumed the existence of such an authority in the agent, instead of leaving the jury to decide whether there was sufficient proof of its existence. And there is no principle better established than that which denies to the court the right of assuming any fact, in aid of a prayer, when the *onus* of proving such fact rests upon the party asking the instruction, no matter how strong and convincing his proof on the subject may be. It is scarcely necessary to sustain this position by authorities; we will however refer to 6 *Gill*, 95, 96. 7 *G. & J.*, 108. 4 *Md. Rep.*, 252, 253.

In support of the prayer the appellants' counsel referred to the case of *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 143, where it is said: "We hold it to be the privilege of a party to raise any question of law arising out of the facts of the case, and to demand the opinion of the court distinctly upon it. If the opposite party believes that other facts not embraced in the hypothesis assumed, are properly calculated to justify an application for other and different instructions, he has the equal privilege of asking an opinion on the additional facts, but not the privilege of controling and modifying the hypothesis of his antagonist." The principle here announced, it is said, fully sustains the correctness of the present prayer, notwithstanding its omission in reference to the agent's authority, because the appellee had the privilege of submitting an instruction on that subject, had he seen proper to do so.

The prayer before the court in 1 *Gill*, did not contain only a portion of the facts on which testimony had been offered, and ask an instruction that if the jury believed those facts the claim of the plaintiff was barred, or he could not recover; but it submitted a proposition in regard to the obligation on the plaintiff to prove a demand of the bill, that acceptance had been refused, and proper notice had been given to the defendant. The prayer contained, within *itself*, a correct legal principle. At all events the court so considered it. For they say, on page 144: "It is not denied that it contained the law of the case, correctly asserting that notice must be proved as therein stated, and that the burthen of proof was upon the plaintiff in the cause. The assertion of this proposition was of no sort of importance to the appellant, unless he could satisfy the jury that the plaintiff below had failed to exhibit the proof which the court declared it to be necessary for him to produce. He thereby virtually denied the existence of such proof." We cannot imagine the court ever intended to advance the doctrine that a party may select a portion of the facts in reference to which proof has been offered, and obtain from the court an instruction to the jury, that if they believe the facts so selected to be true, then the plaintiff is not entitled to recover, when those facts, *of themselves*, are not sufficient to authorise such a conclusion, but to do so they must be aided by some circumstance not presented by the prayer. Whenever a prayer undertakes to set forth facts as the basis of a legal proposition, the facts referred to must be sufficient to warrant the instruction asked for, without any extraneous aid.

The following is the prayer contained in the defendants' second bill of exceptions: "If the jury find that the testator, John Peterson, did, within three years before this suit, acknowledge that he owed five hundred dollars to the plaintiff for the support and clothing of the testator's grandson, Richard H. Iglehart, and also a large sum for the education and support of his granddaughter, Ann Iglehart, but mentioned no specific amount of indebtedness on account of said Ann Iglehart, then the plaintiff cannot rely upon such acknowledgment as sufficient to remove the bar of the statute of limitations beyond

the amount of said five hundred dollars for the support and clothing of said Richard H. Iglehart, and nominal damages for the education and support of said Ann Iglehart."

The appellee says the court were right in rejecting this prayer, because it denies his right to recover, more than nominal damages, for his claim on account of Ann Iglehart, notwithstanding the acknowledgment of the testator within three years before the institution of the suit; whilst the appellant affirms the correctness of the prayer in reducing the plaintiff's claim, in regard to Ann, to only nominal damages, because the testator's acknowledgment, in that respect, mentioned no specific amount, and the alleged claim was nothing more than an open account.

There are few, if any subjects, which have produced more controversy, or a greater number of conflicting adjudications, than questions arising under statutes of limitations. Without therefore undertaking the laborious and useless task of attempting to reconcile the contradictory decisions on the subject, we design to examine our own, and follow them. These, we think, justify the conclusion, that such an acknowledgment as the present, in reference to such a claim, removes the bar of the statute, leaving the plaintiff with the right and under the same obligation to establish his claim, by just the same kind of proof which would have been necessary if the plea of limitations had never been interposed. And why should it not be so, when it has long been settled that the statute does not extinguish the debt, but only bars the remedy, and that an acknowledgment by the defendant of the debt, or a promise to pay within the time prescribed, is sufficient to revive the action? *Oliver vs. Gray,* 1 *H. & G.,* 216. If the debtor thinks proper to admit his indebtedness without limiting or restricting the amount, it would seem to be right that the plaintiff should be allowed to show the extent of his claim, by legal proof. And we understand this principle to be recognized in the eighth rule in *Oliver vs. Gray,* which declares: "An admission that the sum claimed has not been paid, is not sufficient without some further admission, or other proof, that the debt once existed."

Even if this rule may not in express terms refer to a case of an unliquidated or uncertain amount, nevertheless it clearly concedes that an admission, which, *per se*, is insufficient to remove the bar, may be made available for that purpose, by other proof adduced in aid of the admission. And if so in some respects, why may it not be so in reference to the extent of the indebtedness. And in *Guy vs. Tams*, 6 *Gill*, 87, the court say: "To remove the bar of the statute by a subsequent promise to pay, it is not necessary that the creditor, at the time of such promise, should exhibit the evidence of his claim, or state the precise nature or amount thereof. These are facts to be found by the jury, who try the issues joined between the parties in the suit instituted for the recovery of the debt." Here is a most explicit declaration that when a promise or acknowledgment is made, the claimant need not exhibit the evidence, or state the precise nature or amount of the claim, these being facts to be found by the jury; of course to be found by them according to the evidence in the cause, the language of the court clearly excluding the idea of any necessity for the promise or admission to specify any particular amount. This case is decidedly in opposition to the views of the appellants. Nor can we perceive how their case is materially benefitted by that portion of the decision to which we were particularly referred, where the court say: "The jury must also find to what debt or claim the subsequent promise related." For after that it is held, that if the plaintiff's evidence shows but a single indebtedness, the promise might well apply to it. And "if the debtor alleges that there was a different debt to which his promise might apply, the *onus* of proving it rests on him." Reference is then made to 2 *Greenlf. on Ev.*, sec. 441, where it is said: "If the plaintiff proves a *general acknowledgment of indebtment*, the burden of proof is on the defendant, to show that it related to a different demand from the one in controversy." But, in truth, the evidence in the present case raises no difficulty in regard to the identity of the claim. It is referred to by the acknowledgment itself with much particularity, except only in regard to the amount due, which is declared to be "a large sum of money."

In reference to the defendants' third prayer, conceding that if the jury believed the truth of the facts and circumstances enumerated, they might have been at liberty to presume the plaintiff had not, at the death of the testator, any just claim against him on account of his granddaughter Ann, still the presumption was only one of fact and not of law, imperatively binding upon the jury. Indeed we understood the defendants' counsel to admit this in his concluding argument. But whether he did so or not, we think it a correct view of the matter, and consequently that the prayer was erroneous, in asking the court not only to instruct the jury they *might*, but also *ought*, to find the non-existence of the plaintiff's claim.

In an argument of considerable ingenuity, the defendants' counsel undertook to show that "ought" did not mean *must*, and that in the sense in which it was used in the prayer it meant very little, if any, more than "may," and certainly did not make the presumption or inference asked for one of law, imperatively binding on the jury. But in the case of *Columbia Insurance Company of Alexandria vs. Lawrence*, 10 *Peters' Rep.*, 519, under circumstances very similar to the present, the difference between *might* and *ought* is clearly announced by the Supreme Court, in an opinion delivered by Mr. Justice Story. It is there said: "If this instruction had merely asked that the jury might presume, or were at liberty to presume, &c., upon the facts and circumstances so stated, there would not have been any just objection to it. But it goes much farther, and insists that the jury 'ought to presume,' &c., which, in truth, is removing the whole matter of fact from the jury, and compelling them to decide the point as a conclusive presumption of law. This, we are of opinion, would have been wholly unjustifiable on the part of the court. The instruction called upon the court to decide, not upon a conclusive presumption of law, but upon a mere presumption of fact, a matter which exclusively belonged to the jury to consider and decide."

Believing that the circumstances mentioned in the prayer do not amount to an inference or presumption of law, that the plaintiff had no just claim against the testator, Peterson,

at his decease, on account of the education and support of his granddaughter Ann, we think the court did right in refusing the prayer.

Supposing our views to correspond with those of the counsel for the defendants, in thinking that the evidence was not sufficient to authorise such a verdict as the jury gave; still finding no error in the questions of law decided by the court, and presented for our consideration by this appeal, we have no authority whatever to reverse the judgment, and therefore it must be affirmed.

*Judgment affirmed.*