(Decided 13th March, 1894.)

THOMAS O. HARDY *vs.* WILLIAM CEPHAS HARDY, and others.

*Service of Son—Implied promise to Pay—Disallowance of Interest—Statute of Limitations — Acknowledgment of Debt.*

Under proceedings instituted by a son to recover payment out of the estate of his deceased father for services rendered him between September, 1855, and April, 1888, on the farm on which they both resided, the proof showed that the plaintiff worked with intermissions varying as to time, upon his father's farm from 1855 to 1863, in which latter year his father paid him $1000. for services which he had rendered; that he left him in 1863 and shortly

Hardy *vs.* Hardy.

afterwards, at his father's request, returned and continued to perform services of like character with those which he had rendered prior to the year 1863. That the plaintiff did more labor, and improved the place more than any of the other children; that on various occasions the father made arrangements with his other sons to pay them for work and labor to be performed by them on the farm, and agreed upon the amount of the compensation; and time and again promised to pay the plaintiff for his services, commending him in the highest terms for what he had done; and within a few weeks of his death said that he should be paid for his labor : HELD :

1st. That there was ample proof to justify the finding of an implied understanding between the father and the son, that the services rendered were to be charged for, and met by payment.

2nd. That as there were statements in the testimony which showed that the intestate, from time to time, paid the plaintiff small sums of money, for which no credit had been given, and the claim had been allowed to continue so long without an accounting or settlement, no interest should be allowed.

3rd. That the plea of limitations interposed in the cause could not prevail, for the reason that the acknowledgments of the intestate made within three years before the filing of the bill, were explicit and direct.

4th. That while these acknowledgments may have been very general in terms, yet as they sufficiently pointed to the particular indebtedness, they were adequate to remove the bar of the Statute.

When a debt is admitted to be due the law raises by implication a promise to pay it; and it is therefore immaterial whether the promise be made in express terms, or be deduced from an acknowledgment, as a legal implication. In either case the effect is the removal of the bar of the Statute, and the restoration of the remedy upon the original demand.

APPEAL from the Circuit Court for Montgomery County, in Equity.

This appeal was taken from a decree of the Court below (VINSON, J.,) dismissing the plaintiff's bill of complaint. The case is stated in the opinion of this Court.

Hardy *vs.* Hardy.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY, and BOYD, J.

*William Viers Bouic, Jr.*, and *Hattersly W. Talbott,* (with whom was *Thomas Anderson*, on the brief,) for the appellant.

*Robert B. Peter*, and *James B. Henderson*, for the appellee.

ROBERTS, J., delivered the opinion of the Court.

It appears from the testimony in this cause that John Hardy, of Montgomery County, departed this life on the 13th of April, 1888, intestate, possessed of personal estate of inconsiderable value, and seized of valuable real estate, situate in said county, and the District of Columbia. He left surviving him the following children, his only heirs-at-law,—Thomas O. Hardy, William Cephas Hardy, Joseph F. Hardy, Mary D. Hardy, and Elizabeth H. Smith, wife of Angus W. Smith. Letters of administration on the personal estate of the intestate were, by the Orphans' Court of said county, granted to the appellant, who administered the trust. After he had qualified as administrator, the appellant presented to the Orphans' Court, a claim against the estate of his father, the intestate, for thirty years' services rendered him on the farm, upon which they both lived during the period of such service, and for thirty dollars cash loaned, amounting in the aggregate to the sum of $4,530. This account was objected to, and never passed upon by the Orphans' Court, but it does not certainly appear from the testimony what disposition, if any, was made of it. But in any event it is wholly immaterial, for it is quite clear that the personal estate is wholly insufficient to discharge so large a claim, and scarcely sufficient to pay the expenses of administration,

and the other claims owing by the intestate at the time of his death, and the personal estate having been finally settled by the appellant without paying any part of his claim.

The controversy before us arises out of the bill of complaint, filed on the 31st of July, 1889, by the appellant against all the other children and heirs-at-law of John Hardy, for the purpose of subjecting the real estate, situate in said county, of which said intestate died seized, to the payment of appellant's claim for services in working on farm, &c., amounting to the sum of $4,504.17, and for cash loaned September, 1886, the sum of $30, aggregating the sum of $4,534.17, and alleging the insufficiency of the personal estate to pay the just debts due and owing by the intestate at the time of his death.   A new claim is exhibited with the bill, the items of which are somewhat differently stated from the claim filed in the Orphans' Court, but the difference between the two is quite immaterial.   William Cephas Hardy was the only heir who answered the bill, denying the indebtedness of his father to the appellant in any sum, and setting up the bar of the Statute of Limitations against a recovery by the plaintiff.   The appellant's sister, Elizabeth H. Smith, and her husband, have answered the bill, admitting the allegations therein contained, and consenting to a decree for the sale of said real estate as therein prayed.   The other defendants, Joseph F. Hardy, and wife, and Mary D. Hardy, were summoned but failed to appear, and the bill as to them was taken *pro confesso*.

Then followed the taking of testimony, which resulted in a record of more than one hundred and sixty printed pages, and certainly twice the size it should have been. Such a record in a case like this serves no good purpose, but compels an unnecessary expenditure of time and money; hence arises, in a great measure, the complaint

about the costs which parties are required to pay in this
Court.   The testimony which the record contains is un-
doubtedly very conflicting, and somewhat confusing; but
we have gone through its entire length, and given it thor-
ough examination, and careful consideration.   It is con-
tended on behalf of the defendant, William C. Hardy,
who alone contests the claim, that the complainant can
only recover by showing an express, or implied under-
standing existing between him and his father, that the
work and labor which he alleges to have performed for
his father, was to be charged for, and to be met by pay-
ment, and that there is no evidence in the cause show-
ing such an agreement.   The first inquiry which natu-
rally arises here, is one of primary importance, and that
is, did the appellant render the services for which he
now claims payment?   The testimony of his two sisters,
and his brother Frank, all testifying against their own
interest, and being persons who were more familiar with
the daily life of their father, and better acquainted with
the occurrences and circumstances existing at the home
farm of the intestate, than any one else called to testify
in this cause, assert that the appellant rendered valuable
services to his father in working on the farm, and that
his claim is a just one, and ought to be paid.   Even
William Cephas Hardy, who disputes the appellant's
claim, in answer to the 11th interrogatory in chief,
which reads, "In 1863, when you say this money was
paid to Thomas O. Hardy, and you also state that your
father owed it to him, state if you can, for what your
father owed him that money?" answered, "He owed it
to him for his services, and gave it to him, I suppose,
for that."   The claim is for services rendered between
September 6th, 1855, and April 15th, 1888.   We then
have the admission of the contesting defendant that, in
1863, the intestate did owe the appellant for services and
paid him the sum of $1000 therefor; if it be true, and we

think the testimony clearly establishes the fact, that the appellant worked, with intermissions varying as to time, for his father from 1855 to 1863, the year in which Cephas Hardy says his father paid appellant the sum of one thousand dollars for services which he had rendered, it would be but a reasonable inference, that if, after the appellant left home in 1863, and shortly thereafter, at his father's request, returned, and continued to perform service of like character, with that which he had rendered prior to the year 1863, that the service was not gratuitous, but was rendered with the implied understanding that a charge was to be made, and proper compensation was to follow. It is a fact well established by the testimony, that the appellant did a great deal more labor, and improved the place more than any of the other children. And it also appears that on various occasions he made arrangements with his other sons to pay them for work and labor to be performed by them on the farm, and agreed upon the amount of the compensation; and time and again has the intestate promised to pay the appellant for his services, commending him in the highest terms, for what he had done, and promising him that he should be compensated. Within a few weeks of his death, when the shadows were lengthening in his life, when he was about to die intestate, when he knew that he had made no provision for a faithful son, he then said that he should be paid for his labor. We have found no difficulty in ascertaining from a decided preponderance of the proof, that the appellant has performed, during the period named, important services to his father. The next question which we must now consider is one that, in most cases of this character, presents some difficulty. It is but natural that children, after they have attained their majority, should oftentimes find the homes of their childhood a refuge in ill-health, and often after misfortune has overtaken them,

recollections of home, and its surroundings, become too strong to resist. When such is the case, whilst they may assist in the performance of duties connected with the home, yet if such duties are discharged without an express or implied understanding that they are to be charged for, and met by payment, there can be, and there should be, no recovery. To maintain a different rule could not fail to result in unworthy strife, vicious litigation, and dishonest schemes. But, upon the other hand, if a father, who is engaged in an occupation requiring help and assistance, and, in consequence of bad habits, or bad temper, or from any other cause, is unable to obtain the same, or if from any other reason he induces a son after he has attained his majority, to remain at home, to discharge continuous labor and valuable service, would it be in accordance with well recognized principles of justice and fair dealing, that the best part of his life should be thus occupied, and yet receive no compensation? There can be no valid reason why contracts of this character should not be just as binding between father and son, as between other parties, save only that greater particularity is required in establishing the same; but care should always be observed, lest, undue importance be permitted to attach to the relationship existing between the parties, otherwise great injustice may be done.

This Court has heretofore, in *Bantz, Ex'r vs. Bantz, et al.*, 52 *Md.*, 693, and in other cases, been called upon to examine the law applicable to cases of this character, and has determined the same in such manner as to leave no doubt as to the doctrine which should control in this case. In *Bantz's Case* this Court held: "That if under *all the circumstances of the case*, the services were of such a character as to lead to a reasonable belief, that it was *the understanding* of the parties that pecuniary compensation should be made for them, then they might find an

implied promise and *quantum meruit.*'' The case of *Lee vs. Lee and Welsh,* 6 *G. & J.,* 316, and *Stockett vs. Jones and Wife,* 10 *G. & J.,* 276, proceed upon the same principle. In order to justify a claim for services being allowed against a decedent, there must have been a design, at the time of the rendition, to charge, and an expectation on the part of the recipient to pay, for the services. The services must have been of such character, and rendered under such circumstances, as fairly to imply an understanding of payment, and a promise to pay. There must have been an express or implied understanding between the parties, that a charge for the services was to be made, and to be met by payment.

In this case, after careful consideration of all the evidence, we have found no difficulty in reaching the conclusion, that there is ample proof to justify the finding of an implied understanding between the father and the son, that the services rendered were to be charged for, and met by payment.

There is certainly great force in the fact that all the defendants, save one, have testified in this cause against their own interests, maintaining that the appellant performed the services for which he is seeking compensation, that his claim is just and right, and that he is entitled to a reasonable compensation for his work and labor. We think the testimony demonstrates that the charge which the appellant has made cannot be fairly considered to be unreasonable or excessive. The charge of thirty dollars for money loaned is also clearly established. But from a careful consideration of all the proof, we do not think the appellant ought to be allowed interest. There are statements in the testimony which show that the intestate from time to time paid the appellant small sums of money, for which no credit has been given, and in consequence of the claim having been allowed to continue so long without an accounting or settlement, we think no interest should be allowed.

Hardy *vs.* Hardy.

We do not think the testimony of Cephas Hardy sufficient to establish a credit against the plaintiff's claim, because of the direct denial of other witnesses, who were, according to his recollection, present at the time of the payment and conversation; otherwise his admission as to the understanding between the appellant and his father, made against interest, will prevail.

The plea of limitations interposed in this cause cannot prevail, for the reason that the acknowledgment of the intestate made, within three years of the filing of the bill, are explicit and direct. He has repeatedly acknowledged his indebtedness to the appellant, and promised to pay the same; and whilst these acknowledgments may have been very general in terms, yet, when they sufficiently point to the particular indebtedness, they will be deemed adequate to remove the bar of the Statute.

The principle is well settled in this State that when a debt is admitted to be due, the law raises by implication a promise to pay it. It is therefore immaterial whether the promise be made in express terms, or be deduced from an acknowledgment as a legal implication In either case the effect is the removal of the bar of the Statute, and the restoration of the remedy upon the original demand. *Ellicott vs. Nicholls,* 7 *Gill,* 96; *Guy vs. Tams,* 6 *Gill,* 82; *Peterson vs. Ellicott,* 9 *Md.,* 52; *Shipley and Wampler, Ex'rs vs. Shilling,* 66 *Md.,* 563.

We think the claim of the appellant should have been allowed, but, for the reasons stated, without interest. It follows from what we have said, that the decree passed by the Court below should be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed, and cause remanded, costs*
*to be paid out of the proceeds of the sale.*

(Decided 13th March, 1894.)