CHRISTIANA EDELEN Adm'x of FRANCIS EDELEN, *vs.* THOMAS H. EDELEN, and THOMAS H. EDELEN *vs.* CHRISTIANA EDELEN, Adm'x of FRANCIS EDELEN.

Where *objection* is made to the passage of an administration account, and *full proof* demanded of all the *credits* therein claimed, before payment thereof, the fact that a claim has been *passed* by the orphans court, is no evidence of its correctness, but it must be supported by testimony substantially sufficient to establish the facts before a jury.

Where the wife, *during coverture* and without any *agreement* on the part of the *husband* to repay her, voluntarily appropriates a part of her *separate estate* to the maintenance of certain negroes belonging to the husband, she cannot, after his death, charge his estate therefor.

A wife having power to dispose of her separate estate, may give it to, or permit her husband to receive it, and if she does, she cannot after his death charge his estate with what he received, and where the husband receives the interest of his wife's separate estate, and applies it to the *use of the family*, her assent to such receipt and use is *presumed*, and she cannot claim therefor, out of the husband's assets.

The relation of debtor and creditor sometimes exists between husband and wife, growing out of the use and appropriation by the former of the latter's separate estate, but such cases, where the receipt and appropriation are with the wife's *knowledge* and *acquiescence*, are always founded on an *agreement* by the husband to repay the money or property so appropriated.

The court will not infer an *equitable assumpsit*, contrary to the tenor of the obligation subsisting between husband and wife, who cannot contract with each other directly without trustees.

But where the husband receives a sum of money due the wife, as income from her separate estate, *without her consent, knowledge* or *acquiescence*, she may, after his death, claim it from his estate.

A widow who had administered upon, but had by an *ante-nuptial* contract, relinquished all her rights to any portion of, her husband's estate, cannot charge the estate with *counsel-fees*, *costs* and *expenses*, incurred and paid by her, in an unsuccessful attempt to resist *probate* of her husband's will.

A widow who, by an ante-nuptial agreement, had relinquished her rights to her husband's estate in virtue of the marriage, has no right to administer upon his estate, nor to object to probate of his will.

But where the widow has so administered, and the will is afterwards sustained, and admitted to probate, all the ordinary and necessary costs and expenses incurred by her in the administration of the estate must be allowed her out of the estate.

*Register's fees* accruing upon the administration of an estate by the deceased husband, *are sufficiently proved* by the order of the orphans court, *in which* such administration was conducted, *allowing them* as a claim against the husband's estate, in favor of the administratrix by whom they were paid, and who conducted her administration in the *same court.*

A debt, due by the deceased in his life time, and passed by the orphans court, and *paid* by the administratrix in good faith, *before* any objection was made thereto, must be allowed the administratrix.

The cost of a stamp upon the administration bond, is a proper allowance to the administratrix out of the estate.

Costs for the appraisement of negroes belonging to the estate, and who died since administration thereon, are proper allowances to the administratrix.

A claim for personal services rendered by the widow and administratrix, *since the decease of her husband,* in nursing servants while sick, and furnishing them with necessaries, is properly allowed her out of the estate.

Cross-Appeals from the Orphans court for Prince George's county.

These appeals were taken from an order of the court below, allowing and rejecting certain claims in an administration account. The facts of the case, and the various items of this account allowed and rejected, are sufficiently stated in the opinion of this court, and in the argument of counsel.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

*Samuel H. Berry* for Thos. H. Edelen, argued:

1st. The items in the personal account of the administratrix, (voucher A, No. 11,) which were rejected by the court

below, were properly rejected. 1st. Because they purport to have accrued *in the life time* of Francis Edelen, and *during the period of his marriage* with the claimant, for the support and maintenance of certain negroes belonging to her said husband, and when he superintended the joint property of his wife and himself, for the mutual benefit of both. The marriage agreement must be strictly construed, and the wife can claim nothing which that contract does not clearly give her. 6 *G. & J.*, 349, *Ward vs. Thompson.* 5 *Md. Rep.*, 236, *Miller et al., vs. Williamson.* 10 *Md. Rep.*, 255, *Townshend vs. Matthews.* 2nd. Because during the period when these charges purport to have accrued, the wife was incapable of making her husband her *debtor*, unless he received and appropriated to his own use her separate estate, *without her consent or acquiescence.* 2 *Kent*, 164, 370, 371. 2 *Bright on Husband & Wife*, 223, 234. 4 *Md. Ch. Dec.*, 368, *Brown vs. Stewart.* 6 *Md. Rep.*, 375, *Turton vs. Turton.* 3rd. the 14th item, "for attending upon sick servant woman, and the expense of burying her," was a charge for personal services of the wife, in the life time of the husband, for which she could make no charge against his estate, he being entitled to her personal services as husband. (3 *G. & J.*, 504, *Carroll vs. Lee.*)

2nd. The items in this same personal account, (Voucher A, No. 11,) which were allowed by the court, ought to have been rejected. All those items having reference to expenses for a midwife's attendance to the female slaves of the husband, and item 7, for expense of burying a negro child, if proved to have been paid out of the separate estate of the wife, (which is denied,) were paid during coverture and with her *consent* and *acquiescence*, and should therefore have been rejected, upon the same principle as the other charges for the maintenance of these negroes. Item 19, for cash paid Dr. Kirby, for professional attendance *during the life of the husband*, for the same reason should have been rejected, and besides was not *passed* by the orphans court, and not *proved* as required by the act of 1798, ch. 101, sub-ch. 8, sec. 22. For the same reason of *consent* and *acquiescence*, in the appropriation of her separate estate, item 20, was improperly allowed. Items 21 and 22,

53    v. 11.

for drawing lumber and removing servants and furnitnre, are to be rejected on the same principle. Item 23, for "one settee," is without proof.

3rd. Of the other claims, Voucher No. 1, for a counsel fee of $100, paid by the administratrix to her counsel, in contesting *probate* of the will of her deceased husband, and all the various charges in the. other vouchers, for costs in the court below, and in the Court of Appeals, incurred in carrying on this controversy, should have been rejected. They were for services rendered her personally, and not proper charges against the estate. 8 *Gill*, 285, *Ex-parte Young*. By the *ante-nuptial agreement*, she had relinquished all interest in her husband's estate, and had therefore no right to resist the *probate of his will*, and the costs incurred in such a controversy must be paid by herself. 5 *Md. Rep.*, 324, *Maurer vs. Naill.* Most of the other charges are unsustained by proof of payment, or that they accrued on account of or were properly chargeable against the estate, and full proof having been demanded, must be rejected. 1 *Gill*, 358, *Bowling vs. Lamar.*

*Daniel C. Digges*, for the administratrix:

1st. The claims for the maintenance of the negroes should have been allowed. By the marriage contract, these parties were entirely *separate* and *distinct* persons as to their *respective estates*, and the relation of *debtor* and *creditor* could properly exist between them, 6 *Md. Rep.*, 418, *Bowie vs. Stonestreet.* 1 *Gill*, 1, *Stevenson vs. Reigart.* The separate estate of the wife having been applied to the support of these negroes, for the benefit of the husband, there arose a legal or equitable obligation to pay, from which a promise is always implied. 1 *Cowp.*, 290, 294, *Hawkes vs. Saunders.* 1 *H. & G.*, 258, *Murphey vs. Barron.* A request to render the services out of which the obligation to pay arises, will be implied from *knowledge* and *silent acquiescence.* 2 *Greenlf. on Ev.*, *sec.* 108, *notes.* 14 *Johns.*, 378, *Doty vs. Wilson.* This being therefore a *debt* due to the administratrix, she had a right to retain for it against her husband's estate. 1 *Gill*, 28. 1 *Vernon*, 427, *Beard vs. Nutthall.* The jurisdiction of the orphans

court over claims against estates of deceased persons, extends as well to equitable as legal claims, 1 *Gill*, 29.

2nd. As to the claims allowed by the order appealed from, it is insisted, that in this respect the order is correct and should be affirmed, because these claims and each of them are: 1st. Either fully supported by proof to be found in the record, or 2nd. Were allowed and paid before any objection was interposed thereto; or 3rd. Were properly incurred, as will appear by the record, in the recovery and protection of the estate of the intestate; or 4th. Were for debts *bona fide* due by the intestate in his lifetime. *Act of* 1798, *ch.* 101, *sub-ch.* 10, *secs.* 1, 2. 1 *Gill*, 358, *Bowling vs. Lamar.*

BARTOL, J., delivered the opinion of this court.

These appeals bring before this court for review, an order passed by the orphans court of Prince Georges county, rejecting certain claims exhibited by said administratrix against the estate of Francis Edelen; and allowing to her certain other claims and credits against said estate. Objection was made to all the allowances and credits claimed by the administratrix, from No. 1 to No. 18 inclusive, and full proof of the same was demanded, which brings the case within the principles decided in *Lee vs. Lee & Welch*, 6 *G. & J.*, 316, and *Bowling vs. Lamar*, 1 *Gill*, 358. It appears by the record, that the claimant is the widow of the late Francis Edelen, and that an antenuptial deed or contract was duly executed by them, whereby all the property real and personal of every kind, belonging to said Christiana, including certain *choses* in action, was conveyed to a trustee for her sole and separate use during her life, then over to such persons as she might by her deed or will appoint, and in default of any such appointment, to her children; and the said Christiana by said deed, waived and relinquished all rights of dower, and all right to any distributive share of Francis Edelen's estate.

Among the property belonging to the husband in his lifetime, were a number of negro children, who during the coverture, as it is alleged, were maintained at the expense of the wife, or from the produce of her separate estate, and the

charges for such maintenance constitute the 1st, 3rd, 5th, 8th, 10th, 12th, 15th and 17th items, in "*Voucher A, No.* 11," the individual account of the claimant, and which were rejected by the orphans court. We think to that extent, the order appealed from is correct, and we also concur in the propriety of the rejection, of item No. 14, in the same voucher.

In 2 *Roper*, 220, (32 *Law Lib.,*) it is said, "since the wife may appoint, and dispose of her separate property as a *feme sole*, so she may give it to, or permit her husband to receive it, which will preclude her right after his death, to charge his estate with what he received."

This language is quoted in 2 *Bright on Husband & Wife*, 259, and several cases are cited by those authors in support of the position.

In *Squire vs. Dean*, 4 *Bro. Ch. Rep.*, 326, where the husband received the interest of his wife's separate estate, and applied it to the use of the family, her assent to the receipt and application was presumed, and she was not permitted to claim any thing on account of it, out of her husband's assets. See, also, 2 *McQueen*, 298, (66 *Law Lib.*)

The cases cited rest on the express or implied consent of the wife, to the use by the husband of her separate estate.

Cases sometimes arise where the relation of debtor and creditor exists between husband and wife, growing out of the use or appropriation by the husband of the wife's separate estate; but such cases, *where the receipt and appropriation are with the wife's knowledge and acquiescence*, are always founded on an agreement by the husband to repay the money or property so appropriated.

In the case before us, no evidence is found of any such agreement, on the contrary it appears, from the proof, that the maintenance charged was the voluntary act of the wife: an appropriation, not by her husband but by herself, of her means to the purpose, without any agreement on the part of Francis Edelen, to repay the same, or any recognition by them at the time of the relation of debtor and creditor. In 1 *Madd. Ch.*, 586, it is said, "when the wife has the absolute disposal of the money, though she appropriated it to the use of the husband,

his assets are not bound." And in the case of *Clinton vs. Hooper*, 1 *Sumner's Vesey, Junr.*, 188, Lord Thurlow, Chancellor, says: "The court will not infer an equitable *assumpsit*, contrary to the tenor of the obligation subsisting between husband and wife, who cannot contract with each other directly without trustees."

These authorities conclusively establish the propriety of affirming the court's order, on the appeal of Christiana Edelen.

We now proceed to consider the questions involved in the appeal of Thomas H. Edelen, and raised by his objections to the other credits and allowances claimed by the administratrix; and shall first dispose of the several items in *Voucher A, No.* 11, which were allowed by the Orphans court. The 2nd, 4th, 6th, 9th, 11th, 13th, 16th and 18th, of those items, are charges for sums alleged to have been paid by Mrs. Edelen, during the coverture, for the services of a midwife, rendered as alleged to the female slaves of her husband.

There is no sufficient proof in the cause, of their payment by Mrs. Edelen. But in our opinion, if that were proved, they are not proper charges against the estate, they are not distinguishable in principle, from the charges for maintenance; and the reasons and authorities already adduced in relation to the latter, are equally applicable to the items now under consideration.

Upon the same principle, the court ought not to have allowed items No. 7, 19, 21 and 22, in *Voucher A, No.* 11, and were correct in rejecting No. 14 in same voucher. They are sought to be supported on an implied equitable *assumpsit* of the husband; which we have seen is inconsistent with the marital obligations subsisting between them.

No. 20, in the same voucher, seems to us to stand on differerent grounds. It is for a sum of money due to the wife, as income from her separate estate, which was received by the husband.

Dr. John H. Bayne, proves that this sum "was paid by the witness to Francis Edelen for Mrs. Edelen." It does not appear that he received it with her knowledge or acquiescence;

there can therefore be no presumption, in opposition to her right to claim it from his estate.

In the case of *Parker vs. Brooke,* 9 *Vesey,* 583, it was held, that where no consent of the wife was given, nor could be presumed, she was entitled to reimbursement out of her husband's estate, for the whole of what he received of her separate property. In accordance with that principle, which we recognize as well established, we think this item was properly allowed by the orphans court.

No. 23 is without any proof or explanation, and therefore ought to be disallowed.

Having disposed of the several items in *Voucher A, No.* 11, it is necessary to examine the several other vouchers in the administration account.

The record discloses the fact, that after letters of administration on the estate of her late husband, had been granted to Christiana Edelen, a paper alleged to be a will of the deceased, was exhibited to the orphans court for probate, which was objected to by the said Christiana, and a legal controversy thereupon arose; and the costs and expenses incurred by her in said controversy, and the counsel fees paid by her, constitute several items of claim in her said administration account. .

In our opinion, such costs, expenses and counsel fees, are not properly chargeable against the estate.

By the terms of the ante-nuptial agreement, she had waived and relinquished all her rights to any portion of her husband's estate.

This court decided in the case of *Maurer vs. Naill & Walker,* 5 *Md. Rep.,* 324, "that a widow, who by an ante-nuptial agreement, had relinquished her rights to her husband's estate, in virtue of the marriage, has no right to administer upon his estate, nor to object to the probate of his will."

It must follow, therefore, that any cost which she may incur in an attempt to sustain such objection to the probate of a will, must be borne by herself, and cannot be allowed as justly chargeable upon the estate; especially where, as in this case, she is unsuccessful in maintaining her objection.

Upon this principle vouchers No. 1 and 4 ought to be re-

jected, as well as all those items in vouchers 14, 15, 17 and 18, which consist of fees and expenses incurred in carrying on said controversy. But all the ordinary and necessary costs and expenses, incurred by her in the administration of the estate, ought to be allowed; of this character are vouchers 2, 3, 5, 7, 9, 12 and 13, and several of the items in vouchers 14, 15, 17 and 18.

It is proper to remark, however, that of these, vouchers 2, 3 and 5 are not proved. It is necessary that evidence should be adduced, showing that they were incurred for and on account of the estate. Vouchers 7, 9, 12 and 13, were properly allowed.

Vouchers 6 and 16 are for register's fees, accruing upon the administration of the estate of Elizabeth Hawkins by Francis Edelen as executor, all of them within a year before his death or after his death. No better proof of such a claim could be furnished, than the records of the orphans court, where the administration was conducted. And when that court has ordered it to be allowed, it will be presumed, that it was cognizant of the facts from its own records, and this court will not reverse such order, although no evidence of the claim is contained in the record before us.

Voucher 8 is a debt due by the deceased in his lifetime. It was exhibited to the orphans court and by it passed, and paid by the administratrix in good faith, before any objection was made thereto; in such case the administratrix is entitled to an allowance therefor. Voucher or claim No. 10, consists of several items, which it is necessary to examine separately.

1. The credit claimed for a sum of money retained to pay Smoot and Uhler, as due from the deceased on his agreement, would be properly allowed if proved, but no evidence whatever is given to establish the agreement, nor is there any affidavit of the creditor as required by the act of 1798.

2. The credit for cost of stamp on the administration bond, is properly allowed. The 3rd and 4th items, being credits claimed for amount of appraisement of two negroes belonging to the estate, who are alleged to have died, are properly to be allowed, provided evidence be furnished of their death: no evidence whatever is given of that fact.

---

The 4th item in claim No 10, is for the personal services of Mrs. Edelen, since the death of Francis Edelen, in nursing servants while sick, and furnishing them with necessaries. This item is proved by the testimony of Dr. John B. Kirby, and we think is clearly within the principles decided in *Lee vs. Lee & Welch,* and was properly allowed.

In accordance with the views expressed, this court will affirm the order of the orphans court, so far as relates to the appeal of Christiana Edelen; and on the appeal of Thomas H. Edelen, the order will be affirmed in part and reversed in part, and the cause will be remanded to the orphans court for further proceedings, with leave to Christiana Edelen, the appellee, to adduce further proof in support of such items of her account, as have been disallowed only for want of proof. Under all the circumstances of this case, we think the costs of these appeals ought to be paid out of the estate, and will sign a decree accordingly.

*Order affirmed in part and reversed in part.*