SARAH J. TYSON *vs.* JOHN W. TYSON.

*Divorce a mensa et thoro—Alimony—Wife's separate estate—*
*Absolute gift as between Husband and Wife.*

A legacy amounting to $2873.35, from the wife's father, was paid by his executor, to the husband and wife jointly, and they executed a joint and several release therefor under seal, and acknowledged the same as their act, before a justice of the peace. The money was appropriated by the husband. Years afterward, the wife filed a bill of complaint, asking that she might be divorced *a mensa et thoro*, that proper alimony might be awarded to her, and that the said sum of $2873.35 might be paid to her by her husband. A decree was passed divorcing the complainant *a mensa et thoro* from her husband, and awarding her alimony to the extent of $156 per annum, during the joint lives of herself and husband, but omitting to award her the said sum of $2873.35. The husband's entire property consisted of a small farm of about eighty acres, and a house and lot renting for about forty dollars a year. His income from these sources did not exceed $250 per annum. On appeal from the decree by the complainant, the same was affirmed, it being HELD.

1st. That the conversion of the money by the husband with the concurrence of the wife, and her conjoint act and deed destroyed her right to recover it as her separate property after divorce, after a lapse of a series of years without any promise or agreement on the part of the husband to return or repay it.

2nd. That the transaction amounted to an absolute gift.

APPEAL from the Circuit Court for Cecil County, in Equity.

The case is stated in the opinion of the Court.

The cause was submitted on brief to BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*Henry Lyttleton Physick* and *Albert Constable,* for the appellant.

*Robert C. Thackery* and *Hiram McCullough,* for the appellee.

BOWIE, J., delivered the opinion of the Court.

The decree, the subject of the appeal in this case, was passed upon the appellant's bill; and in pursuance of the prayer for relief, divorced the appellant from the appellee, *a mensa et thoro,* and awarded her alimony to the extent of one hundred and fifty-six dollars per annum, during the joint lives of the husband and wife, but omitted to award to the appellant, "the property or estate she had when married or the value thereof," as specially prayed by her bill.

The separate property or estate claimed by the appellant, consisted of a legacy or bequest amounting to $2873.75 from her father, which was paid to the husband and wife jointly, by the executor of her father's estate in the year 1864, during the coverture, and for which they executed a joint and several release under seal, and acknowledged the same as their act, before a justice of the peace.

The appellant contends the Court erred in not granting the specific relief prayed as to her separate estate.

It is urged on her behalf, that under the provisions of the Code of Public General Laws, it was the imperative duty of the Court below, upon granting a divorce "*a mensa*," to restore to her this separate estate, whether held by her at the time of her marriage, or acquired subsequently during marriage.

On the other hand, the appellee insists that property acquired subsequently to the marriage, is not embraced by the language of the Code, but if it is included, that said legacy was appropriated and converted by him *jure*

*mariti,* with the knowledge and consent of the wife, without any agreement to repay or return it, or to hold it for her use and benefit.

Very ingenious and learned arguments are submitted by the counsel of the parties, in support of their respective theories, turning in part upon the facts of the case, but mainly upon the construction of the language of the Code, defining the powers of the Court in cases of divorce.

The clause relating to this subject is found in Article 51 of the Revised Code, sec. 13, title, Husband and Wife, sub-title, Divorce; its language is as follows: " Divorces *a mensa et thoro,* may be decreed for the following causes, to wit: * * * *

"And in all cases where a divorce is decreed, the Court passing the same shall have full power to award to the wife, such property or estate as she had when married, or the value of the same, or of such part thereof, as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any . such property as the Court may deem reasonable."

It is obvious from the most casual reading of this clause, that the power or duty of the Court, does not depend on the cause of the divorce, or the conduct of the defendant, but is made to depend on " the *circumstances of the husband at the time of the divorce."* Nor is the duty absolute and unqualified, but the part to be awarded is such as the Court may deem reasonable.

However outrageous the conduct of the husband may have been, the law did not design the restoration of the wife's separate property, as a punishment of his misdeeds, or a penalty for his violation of his marriage vows; but its object is to reinstate the wife, as far as possible, to her rights of property, for future provision and support.

It would be a legal absurdity to decree restoration of money or property, against an insolvent husband.

Nor was it contemplated as we apprehend, to authorize the Court to annul all previous disposition made by the wife during coverture, by gifts to her husband or others.

Hence in ascertaining what property is subject to this discretionary power of restitution or compensation, it is necessary to inquire under what circumstances the same was appropriated or converted by the husband.

If the husband received and applied the fund, whether money, goods or chattels, or collected *choses in action,* with the wife's privity and consent, and without an agreement or promise to repay or restore it, no legal obligation rests on the husband to restore it; no right of action enures to her, and to that extent, her rights are extinct. *Edelen vs. Edelen,* 11 *Md.,* 420; *Kuhn vs. Stansfield,* 28 *Md.,* 210; *Oswald vs. Hoover,* 43 *Md.,* 360.

A decree for divorce has no retroactive effect; *per se,* it does not legally restore the "*statu quo*" of the parties before marriage, or annul their voluntary and legal acts during coverture.

BISHOP, treating of the consequences of divorce flowing by law, says, "coming now to consider the effect of the dissolution of a valid marriage upon property rights, we must remember, that the decree of divorce, so far from undoing the original marriage, expressly affirms it, and, therefore, does not restore the parties to their former condition, but places them in a new one. Consequently, all transfers of property which were actually executed either in law or fact abide; for example, the personal estate of the wife reduced to possession by the husband, remains his after the divorce, the same as before." 2 *Bishop, p.* 706, *sec.* 705. Again, p. 731, referring to the effect of a divorce *a mensa,* "This divorce does not at common law, and without statutory aid, change the relation of the parties as to property."

Assuming that the Code confers on the Court the power of awarding the wife all the property she had during the

coverture, as well as that possessed prior and at the time of the marriage, that power must be qualified by the rights acquired by the husband, or others through him, claiming with her privity and consent, and also by the circumstances of the husband at the time of the divorce.

The proof of the value of the appellee's estate is very meagre, but such as there is, shows his property was very small. His whole property according to the evidence, consists of a small farm of about eighty acres, and a house and lot, renting for about forty dollars a year. His income from these sources was not more than $250 per annum.

The decree allows the wife $156 annually, for alimony during their joint lives, and requires the appellee to convey unto a trustee property sufficient to yield the same, etc.

The release of Mr. and Mrs. Tyson, executed on the 29th of August, 1864, acknowledges the receipt of $2873.35, from Joseph Miller, executor of Cloud Carter, (father of Mrs. Tyson,) "being in full of the share of the said Sarah J. Tyson, wife of John W. Tyson, of the estate of said Cloud Carter, and that it is intended to be a full and final release therefor."

This release is executed under the hands and seals of both husband and wife, and acknowledged before a justice of the peace as their respective act.

It is clear from this instrument, and the testimony of the executor, that this fund was paid to the husband with the full knowledge, privity and consent of the wife. There does not appear to have been any objection on the part of the appellant, nor is there any competent evidence that this release was procured by force or fraud, or undue influence. So solemn an assent to the receipt and appropriation of the money by the husband, on the part of the wife cannot be regarded as mere form.

In some of its features, as regards the receipt and appropriation of the money, the facts of this case, are

very similar to those in the case of *Kuhn, Garnishee of Somerville vs. Stansfield.* There, the receipt was given by the wife and husband, to the father of the wife for a sum of money ($800) as an advancement, with a view to a portion or settlement of the daughter.

This Court, commenting on the facts of "*knowledge and acquiescence*" developed in that case, and on other cases cited, said "it is equally well settled, that the relation of debtor and creditor may exist growing out of the appropriation by the husband of the wife's separate property, but if received and appropriated with her knowledge and acquiescence, this Court has said in *Edelen vs. Edelen,* 11 *Md.,* 420, that in such cases, there must be an agreement by the husband to repay the money so appropriated." * * * * * "That it was received with the knowledge and acquiescence of the wife, admits of no doubt, and as to the agreement to repay it, both papers are silent." * * * * Again, "being her separate property all the authorities concur in saying, that in permitting the husband to receive it, she is precluded from making any demand." 28 *Md.,* 214, 215, 216.

If the effect of knowledge and acquiescence on the part of the wife was sufficient to destroy her right as creditor in this case, unless there was an agreement or promise of the husband to repay, it follows, necessarily, that the conversion of the money by the husband, with the wife's concurrence, and her conjoint act and deed, must equally destroy her right to recover it as her separate property, after divorce, after the lapse of a series of years, without any promise or agreement of the husband to return or repay it.

There was no loan or trust created between them, but the transaction amounted to an absolute gift.

The wife exercised her *jus disponendi* absolutely, and without reserve.

Whether this case is considered as a question of property between husband and wife, or one of provision to be

made for the wife, having regard to the circumstances of the husband at the· time of the divorce, we find no error in the decree appealed from, and therefore affirm it, the costs to be paid by the appellee.

*Decree affirmed.*

(Decided 2nd June, 1880.)