HENRY LUERS et al., administrators,

v.

PETER BRUNJES et ux.

Moneys given by a married woman to her husband in 1855, and for which she received no evidence or security until 1877, when he had become insolvent—*Held*, not to sustain, under the circumstances, as against his existing creditors, a transfer of property to her in 1877, but as to them to be fraudulent.

Creditor's bill. On final hearing on pleadings and proofs.

*Mr. C. L. Corbin*, for complainants.

*Mr. John Linn*, for defendants.

THE CHANCELLOR.

On the 1st of May, 1875, Henry J. Ockershausen and Peter Brunjes gave to the executors of Henry Luers, deceased, a bond conditioned for the payment by them of $38,000, with interest. They also gave a mortgage of real estate to secure the payment of the bond. The mortgage was foreclosed by the complainants, who are administrators with the will annexed of Henry Luers, and under the foreclosure the mortgaged premises were sold in 1879. There was a deficiency. March 18th, 1879, a judgment was entered in the supreme court of New York against Ocker-

shausen and Brunjes in favor of the complainants for $33,015.86 of the bond debt, and on the 19th of August, 1879, the complainants recovered judgment thereon in the supreme court of this state for $33,605.87. Subsequently, execution against goods and lands was issued on this latter judgment and returned wholly unsatisfied. The object of this bill is to compel the application to the payment of the last-mentioned judgment of a mortgage for $11,500 upon the stock and fixtures of a brewery, given to and held by Mrs. Brunjes. The mortgage was given to her for a debt due her husband, and for which, with debts due others, a previous chattel mortgage for $30,000 was given to him in 1876. The personal, individual interest of Brunjes in that mortgage of $30,000 was to the amount of $11,500. After that mortgage was given to him he assigned that interest to his wife, and in 1878 a separate mortgage was given to her for it. In 1879 another mortgage was given to her instead of the last-named mortgage. As will have been seen, the complainants' debt was contracted in or about 1865. It was part of the consideration which Ockershausen and Brunjes agreed to pay for the interest of Luers in the property of the firm of Brunjes, Ockershausen & Co., of which Luers was a member. He died in or about the year 1865. The complainants insist that the transfer by Brunjes to his wife of the debt of $11,500 due him, was fraudulent as to those of his creditors whose debts then existed. The only evidence on the subject of the consideration of the transfer, is the testimony of Brunjes and his wife. It appears from that, that the consideration was money belonging to Mrs. Brunjes, which, after their marriage, he received and applied to his own use. They were married in 1853. She had at that time a house and lot in the city of New York, two notes, one for $2,500, made by her husband's brother, and the other for $800, made by John Hemken, and she had $1,200 in money. She says she lent the $1,200 to her husband very soon after their marriage; that she does not know what he borrowed that money for, nor what he did with it, but guesses he put it in his business; that the two notes were paid to her husband with her consent, and that they were so paid not long after the marriage—

within a year, she thinks; that the house and lot were sold about 1855 or 1856, for $4,000 or $5,000 above the amount of a mortgage for $3,000, which after her marriage she had put upon them; that the money for the mortgage and the money for the property were paid to her husband with her consent, and that she does not know what he did with those moneys. They both speak of the money he received from her as having been lent to him. She, however, never received any security for or acknowledgment of any kind from him for it up to the time of the transfer in 1877, a period of about twenty-two years. He never paid or gave to her anything on account of it; never paid her any interest for it, and never gave her any evidence of the alleged indebtedness, and she never asked for any. He says the money was lent to him "right after they were married;" that she gave him the control of it; that she gave it to him; that he put the avails of the mortgage, $3,000, in the grocery business, and put the proceeds of the sale of the property in the sugar business; that between the time when he received the $3,000 and the time when he received the proceeds of the sale, he gave up the grocery business and went into the sugar business, and that he then thought himself a prosperous man. It is quite clear, from their statements, that the money was not lent by the wife to the husband, but that he received it with her full consent, and, with like consent, applied it to his own purposes. He does not appear to have ever promised to repay it, nor does it appear that she ever expected him to repay it, but the contrary. He appears to have passed over to his wife all of his property which was of any value. The transfer evidently was not *bona fide*, and it is not valid as against the complainants' debt. There will be a decree accordingly.

The case is within the principles of the following cases: *Besson* v. *Eveland, 11 C. E. Gr. 468; Post* v. *Stiger, 2 Stew. Eq. 554; Clark* v. *Rosenkrans, 4 Stew. Eq. 665; Miller* v. *Sauerbier, 3 Stew. Eq. 71; Sayre* v. *Fredericks, 1 C. E. Gr. 205; Edelen* v. *Edelen, 11 Md. 420; Kuhn* v. *Stansfield, 28 Md. 210; Humes* v. *Scruggs, 4 Otto 22.* See, also, *1 Bish. M. W.* § *123.*